IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

COURTNEY LAWTON,

               Plaintiff,

     v.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA; HANK
BOUNDS, Individually and in his
Official Capacity; and RONNIE GREEN,
Individually and in his Official
Capacity,

               Defendants.

Case No. 4:21-cv-3162

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

Respectfully submitted:

Andre R. Barry, #22505
Nathan D. Clark, #25857
Jessica K. Robinson, #27380
CLINE WILLIAMS WRIGHT
   JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 U.S. Bank Building
Lincoln, Nebraska 68508-2095
(402) 474-6900
abarry@clinewilliams.com
nclark@clinewilliams.com
jrobinson@clinewilliams.com

November 22, 2021

Defendants Board of Regents of the University of Nebraska, Hank Bounds in his individual and official capacities, and Ronnie Green in his individual and official capacities, respectfully submit this Brief in Support of their Motion to Dismiss.

## I.   INTRODUCTION

Plaintiff's Complaint is subject to dismissal on jurisdictional grounds and because it fails to satisfy basic requirements of pleading. With respect to jurisdiction, the Eleventh Amendment bars Plaintiff's claims against the Board of Regents, as well has her claims against University President Hank Bounds and UNL Chancellor Ronnie Green in their official capacities. It also bars Plaintiff's claim for declaratory judgment in this case. With respect to the relevant pleading standards, Plaintiff has failed to adequately plead a claim for retaliation under the First Amendment, or for violation of her rights to due process or equal protection of the laws under federal or state law. There is also no private right of action under the Nebraska Constitution for the state constitutional claims Plaintiff attempts to bring, and even if there were, any such claim would also be barred by state sovereign immunity. Plaintiff's Complaint is thus subject to dismissal in its entirety.

## II.   BACKGROUND

Plaintiff is a Ph.D. graduate of the University of Nebraska. When Plaintiff was in her final year of graduate studies, she was employed as a non-tenure track lecturer in the English Department at the University of Nebraska–Lincoln ("UNL"), with a salary of $18,240.00 per year and the duty to teach two courses in the fall semester and two courses in the spring semester. [Filing No. 1 at ¶ 4 & Ex. 1.] The letter confirming Plaintiff's appointment, dated August 4, 2017, was accepted by Plaintiff on August 10, 2017. [Id. at ¶¶ 4, 5 & Ex. 1.]

The Complaint refers vaguely to the facts which led to this lawsuit. Plaintiff alleges in conclusory fashion that on August 25, she "exercised her right to free speech" in a "free speech area" near the UNL Student Union. [Id. ¶ 6.] Although Plaintiff alleges that the incident was captured on video and she was "involved in the 'robust free exchange of ideas,'" she does not allege with any specificity what she said or did that she claims is protected by the First Amendment. [Id. ¶¶ 6, 15.]

On August 28, 2017, President Bounds stated publicly that Plaintiff's behavior was "unprofessional" and "not in keeping with the standards of conduct" of the University. [Id. ¶ 8.] On September 5, Plaintiff was notified that she was being removed from the classroom and reassigned to non-teaching duties for the remainder of the fall semester. [Id. ¶ 11.] On September 6, 2017, a spokesperson for the Board of Regents released a written statement that "our expectations for civility were not met by the lecturer in her behavior . . . and not representative of the University where the robust free exchange of ideas takes place 24 hours a day, 7 days a week." [Id. ¶ 13.]

On October 30, 2017, an editorial written by three members of the Nebraska Legislature appeared in the Hastings Tribune. [Id.¶ 17.] Plaintiff alleges that the state senators posed five questions suggesting that the University of Nebraska was hostile to conservative students. [Id.] Other than a snippet from one sentence of the op-ed, Plaintiff does not allege what the article specifically stated. [Id.] Plaintiff alleges that on November 17, 2017, Chancellor Green sent an article to newspapers stating that Plaintiff's behavior "that day was unacceptable," and that "she will not teach at our university going forward because of this inappropriate behavior." [Id. ¶ 18.]

Plaintiff alleges that she was not given a hearing on the decision to reassign her to non-teaching duties. [Id. ¶ 24.]  She does not allege that she ever requested such a hearing. [Id.]

Plaintiff graduated from the University with a Ph.D. in English in August 2018. [Id. ¶ 30.] Plaintiff acknowledges that she found employment, but not, she says, "as a professor at a research university."  [Id.] She alleges, again without specificity, that her prospects for future employment were diminished by her inability to teach during the balance of the 2017–2018 academic year. [Id. ¶ 30.]

Plaintiff has sued the Board of Regents, the former President of the University, Hank Bounds, and the Chancellor of UNL, Ronnie Green. She seeks a declaratory judgment that Defendants' conduct violated her state and federal constitutional rights, compensatory and punitive damages, costs, and attorney's fees. Plaintiff does not seek injunctive relief. Nor does her Complaint limit the type of relief she seeks against the Board of Regents or against President Bounds or Chancellor Green in their official capacities.

### III.    LEGAL STANDARD

Defendants' challenge to this Court's subject matter jurisdiction is facial, rather than factual. See Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (discussing distinction). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). Sovereign immunity is threshold issue of subject matter jurisdiction. Harmon Indus., Inc. v. Browner, 191 F.3d 894, 903 (8th Cir. 1999).

"Dismissal under Fed. R. Civ. P. 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Cronin v. Peterson, 288 F. Supp. 3d 970, 981 (D. Neb. 2018) (quotations omitted). Motions to dismiss pursuant to Rule 12(b)(6) permit parties "to test the legal sufficiency of the pleadings." In re Am. River Transp. Co., 728 F.3d 839, 848 (8th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009)). To survive a motion to dismiss for failure to state a claim, "[t]he facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim." Cavanaugh v. Bartelt, 178 F. Supp. 3d 819, 827 (D. Neb. 2016), aff'd (Sept. 7, 2016).

## IV.   ARGUMENT

**A.    The Claims Against the Board of Regents and Official Capacity Defendants are Barred by Sovereign Immunity.**

It is well settled that a § 1983 claim cannot be brought against a state, and the Board of Regents is an agency of the State of Nebraska. Neither can such a claim be brought against a state official in her official capacity if the Plaintiff does not seek prospective relief, which Plaintiff does not do here. Accordingly, the Board of Regents, and Bounds and Green in their official capacities, should be dismissed from this suit with prejudice.

### 1.    The Eleventh Amendment bars Plaintiff's claims against the Board of Regents.

"Both the Nebraska Supreme Court and the U.S. Court of Appeals for the Eighth Circuit have held that the Board [of Regents] is a state agency with sovereign immunity under the Eleventh Amendment." Krause v. Bd. of Regents of Univ. of Nebraska, No. 8:16CV204, 2016 WL 11658910, at *2 (D. Neb. July 15, 2016) (citing

5

Doe v. Bd. of Regents of the Univ. of Neb., 788 N.W.2d 264, 281 (Neb. 2010); Becker v. Univ. of Neb. at Omaha, 191 F.3d 904, 908 (8th Cir. 1999)). "The State of Nebraska has not waived [the Board of Regent's] sovereign immunity or consented to suit in federal court." Id. at *2. Accordingly, the Board of Regents should be dismissed from this suit.

### 2. The Eleventh Amendment bars Plaintiff's claims against President Bounds and Chancellor Green in their official capacities.

It is axiomatic that Ex Parte Young only allows suits against state officials in their official capacity if the Plaintiff is seeking prospective injunctive relief. Church v. Missouri, 913 F.3d 736, 747–48 (8th Cir. 2019). The only form of relief sought by Plaintiff besides damages is for a declaration that Defendants' past conduct violated federal and state law. [Compl. at 13, 15 & 17.] "However, while a suit to enjoin state employees in their official capacity may proceed if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, a declaratory judgment establishing past liability of the state is nevertheless forbidden by the Eleventh Amendment." Llanes v. Nebraska State Patrol, No. 4:06CV3155, 2007 WL 1321733, at *1 (D. Neb. Apr. 2, 2007) (citing Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 646 (2002)).

The only alleged conduct about which Plaintiff seeks a declaration occurred in the past, and so the only effect of that declaration would be to establish Defendants' potential liability for Plaintiff's damages claims. Because there is no request for prospective relief—as noted above, Plaintiff is no longer a student at the University—Plaintiff's claims against Bounds and Green in their official capacity should be dismissed with prejudice.

6

**B.     Plaintiff has failed to state a claim on which relief may be granted.**

Plaintiff has failed to state a claim on which may be granted. Her claims for First Amendment retaliation do not sufficiently identify the allegedly protected conduct in which she was engaged, her claim for violation of due process is missing essential facts, and her claim for equal protection is not cognizable under Supreme Court precedent and the case law of this Court.

**1.     Plaintiff fails to sufficiently identify the substance of any speech or conduct protected by the First Amendment.**

An essential element of any First Amendment retaliation claim is that the Plaintiff "engaged in a protected activity." Bennie v. Munn, 822 F.3d 392, 397 (8th Cir. 2016). Where such a claim is brought by a public employee claiming she suffered an adverse employment action in retaliation of the exercise of her First Amendment rights, this element is met where "the employee spoke as a citizen on a matter of public concern." McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cty., Mo., 471 F.3d 918, 920 (8th Cir. 2006) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). It is only upon such a showing that "the possibility of a First Amendment claim arises." Garcetti, 547 U.S. at 418.

"To avoid dismissal, [a] complaint for a First Amendment violation must at least put the defendants on notice that some specific speech or conduct by the plaintiff led to the" adverse employment action. Kyle v. Morton High Sch., 144 F.3d 448, 454 (7th Cir. 1998); see also Winters v. Meyer, 442 F. Supp. 2d 82, 87 (S.D.N.Y. 2006) ("To survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." (quoting Friedl v. City of New York, 210 F.3d 79, (2d Cir. 2000))).

7

This element is conspicuously absent from Plaintiff's Complaint. The sole paragraph with any allegations respecting Plaintiff's allegedly protected conduct states:

> On or about August 25, 2017, the plaintiff exercised her right to free speech as guaranteed to her by the First Amendment of the Constitution of the United States by expressing her views while she was in the "free speech area" located at or near the student union at the University of Nebraska Lincoln campus.

[Compl. ¶ 6.]  This is the definition of a conclusory allegation. Whether Plaintiff "exercised her right to free speech" is a legal conclusion based upon the facts of her conduct. McGee, 471 F.3d at 920. In an apparent attempt to deemphasize actions that University administrators considered to be "unprofessional," "unacceptable, and "not in line" with the University's "expectations for civility," Plaintiff offers not a single allegation of what those factual circumstances were, other than that she was involved in the "robust exchange of ideas." Such vague and conclusory allegations are not sufficient to plausibly allege that Plaintiff was speaking as a private citizen on a matter of public concern or that the decisions to assign her different duties were made in retaliation for her exercise of First Amendment rights. Plaintiff's Complaint is thus subject to dismissal for her failure to plead sufficiently substantive facts concerning her allegedly protected conduct.

**2.    Plaintiff has failed to state a claim for violation of her right to due process.**

In Count Two of her Complaint, Plaintiff alleges that she was deprived of a property interest in her employment with the University. Plaintiff does not specify whether she is claiming a violation of substantive due process or procedural due process. Her Complaint does not state a claim for violation of either type.

### a.     There was no violation of substantive due process.

"To state a plausible substantive-due-process claim, [a plaintiff] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than ... arbitrary, capricious, or in violation of state law.'" Harrington v. City of Omaha, No. 8:20-CV-412, 2021 WL 2321757, at *22 (D. Neb. June 7, 2021) (citing Young v. City of St. Charles, 244 F.3d 623, 628 (8th Cir. 2001); Anderson v. Douglas Cnty., 4 F.3d 574, 577 (8th Cir. 1993).  Sufficiently outrageous or truly irrational is a high standard. Harrington, 2021 WL 2321757, at *22 (citing Christiansen v. West Branch Cmty. Sch. Dist., 674 F.3d 927, 937 (8th Cir. 2012)). To find a government action sufficiently outrageous requires "violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." Harrington, 2021 WL 2321757, at *22; (citing Christiansen, 674 F.3d at 937-38; C.N. v. Willmar Pub. Schs., Indep. Sch. Dist., 347, 591 F.3d 624, 634 (8th Cir. 2010).

The actions allegedly taken by Defendants—a shift in the assignment of Plaintiff's duties from teaching to non-teaching, while Plaintiff retained her paid position, salary, and benefits with the University, do not come close to meeting the standard for violation of substantive due process.

### b.     There was no violation of procedural due process.

Neither has Plaintiff alleged any actionable violation of procedural due process. To state a claim for violation of due process, Plaintiff must allege a constitutionally protected interest in life, liberty, or property. Plaintiff alleges she

had a property interest in "her employment with the University of Nebraska." [Filing No. 1 ¶ 46.] She suggests she was entitled to, and denied, a hearing under a provision of the University's bylaws relating to "the termination of an Appointment for a Specific Term." [Id. ¶¶ 23, 47.] Plaintiff's claim that her right to procedural due process was violated fails because she has not plausibly alleged the loss of a constitutionally protected property interest, and because she has not alleged that she requested a hearing.

Plaintiff does not allege that she lost her job with the University—only that she was reassigned different, non-teaching duties. But Plaintiff did not have a constitutionally protected property interest in performing particular job duties, where the assignment of new duties was not accompanied by any loss of rank, pay, or benefits.  See Parkman v. University of South Carolina, 44 Fed. App'x 606, 616 (4th Cir. 2002) (former head musician librarian did not have a procedural due process claim based on a property interest when he was demoted to the special projects librarian position because his tenure status and rate of compensation remained "completely intact"); Ferraro v. City of Long Branch, 23 F.3d 803, 807 (3d Cir. 1994) (municipal employee failed to establish that city deprived him of property interest by assigning him to more manual labor and less managerial and administrative work,  because he was not discharged nor was he stripped of his job title nor were his salary or benefits affected). Thus, even accepting the allegations of the Complaint as true, Plaintiff was not deprived of a constitutionally protected property right in her job.

Even if Plaintiff had alleged deprivation of a protected property interest, she has failed to allege an essential element of her due process claim. In paragraph 37

10

of her Complaint, Plaintiff alleges that she "was never given any type of due process hearing prior to retaliatory actions being taken against her." [Id. ¶ 37.]   This allegation presumably refers to the decisions to remove Plaintiff from the classroom on September 5, 2017, and the decision not to return her to the classroom for the second semester which was allegedly made on November 17, 2017. [Id. ¶¶ 11, 18.] But Plaintiff does not allege that she objected to the initial decision to remove her from the classroom on September 5, 2017, or that she ever requested a hearing after being notified of the decision, made in November 2017, not to return her to the classroom for the second semester.

The absence of any such allegation defeats Plaintiff's claim for violation of due process. The general rule stated in Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982), is that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." Christiansen v. West Branch Community School Dist., 674 F.3d 927, 935 (8th Cir. 2012).  However, an exception to this rule exists when a litigant is asserting the deprivation of a property right in violation of procedural due process. Specifically, a litigant like the Plaintiff "asserting a deprivation of [a property right in violation of] procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." Wax'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000) (dismissing property owner's procedural due process claim because property owner failed to exhaust his state remedies); Crooks v. Lynch, 557 F.3d 846, 848–49 (8th Cir. 2009) (dismissing former Deputy Sheriff's property interest claim for failure to exhaust).

Plaintiff alleges that the University had procedures for a hearing in the case of "termination of an Appointment for a Specific Term," which she appears to

contend applied to her case. [Filing No. 1 ¶ 23.] But Plaintiff has failed to allege that she ever requested such a hearing. Courts addressing similar situations have held that there is no violation of due process where a plaintiff fails to request a hearing. See Crooks, 557 F.3d at 849 (holding that plaintiff's claim for violation of due process failed where he failed to request a hearing before filing suit); Suckle v. Madison General Hospital, 499 F.2d 1364, 1366 (7th Cir. 1974) ("[Plaintiff] cannot sue in federal court to secure a right [to a due process hearing before denial of reappointment] which he declined when it was voluntarily offered to him.").

Because Plaintiff has not alleged that she availed herself of any of her state remedies, much less that she exhausted them prior to filing her claim, she has failed to sufficiently allege deprivation of a property right in violation of her procedural due process rights.

### 3.   Plaintiff fails to plead an equal protection claim.

Plaintiff's attempt to plead an equal protection claim also fails. In Count Three of her Complaint, Plaintiff asserts a "class-of-one" equal protection claims—that "no other person has ever been removed from teaching and/or permanently banned from employment as an instructor, teacher, or professor at the University of Nebraska without any type of adjudication hearing." [Filing No. 1 ¶¶ 53, 54.]

The Supreme Court has expressly ruled that claims such as this are not cognizable under the Equal Protection Clause. In Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), the Court held "that the class-of-one theory of equal protection has no application in the public employment context," so as not to "impermissibly constitutionalize the employee grievance." Id. at 607 (second passage quoting Connick v. Meyers, 461 U.S. 138, 154 (1983)). Thus, "a public

employee can[not] state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class." Id. at 594.

Plaintiff makes no allegation that she was a member of any particular class, let alone that any different treatment she received was the result of such class membership.   Her sole allegation regarding similarly situated persons and differential treatment asserts only: "Upon information and belief, no other person has ever been removed from teaching and/or permanently banned from employment as an instructor, teacher or professor at the University of Nebraska without any type of adjudication hearing." [Compl. ¶ 54.] Plaintiff's equal protection theory is plainly based upon a "class-of-one" theory. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000).

Even if Engquist did not bar Plaintiff's class-of-one claim, her Complaint would still be insufficient to plausibly allege a violation of the Equal Protection Clause:

- Most significantly, Plaintiff's Complaint fails to identify any similarly situated individual who received different treatment. "Absent a showing that other similarly-situated persons received preferential treatment, the plaintiff does not have a viable equal-protection claim." Harrington, 2021 WL 2321757, at *18. To be similarly situated, a person "must be identical or directly comparable to the plaintiff in all material respects." Id. (quoting Robbins v. Becker, 794 F.3d 988, 995 (8th Cir. 2015)). Plaintiff does not allege the existence of any such individual.

13

- Even if Plaintiff had identified a similarly situated individual—which she has not—she would also need to specifically describe the disparate treatment. "A class-of-one plaintiff must therefore provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." Robbins, 794 F.3d at 996 (quoting Nolan v. Thompson, 521 F.3d 983, 990 (8th Cir.2008)). This is a "demanding standard" in which "saying the magic words is not enough." Id. (second passage quoting Charleston v. Bd. of Trs. of Univ. of Ill. at Chi., 741 F.3d 769, 775 (7th Cir. 2013)). Plaintiff's attempted claim under the Equal Protection Clause also fails to meet this requirement: There is no attempt to describe disparate treatment of the allegedly preferred class.

## C. There is no private right of action for Plaintiff's state constitutional claims.

Plaintiff's Complaint makes various general references to the Constitution of the State of Nebraska and unspecified state statutes. [Id. ¶¶ 1, 36, 40–42, 48–49, 51, 53, 55.] Plaintiff does not specifically allege any provision of the Nebraska Constitution which she claims was violated. [Id.] It is unclear whether Plaintiff seeks damages on any claims asserted under the Nebraska Constitution. If she does, she does not say so in her Complaint. If the Court finds that Plaintiff does attempt to assert a claim involving freedom of speech, due process, or equal protection, that claim would fail for the same reason as Plaintiff's federal constitutional claims. It would also fail for additional reasons—the State of Nebraska has not waived sovereign immunity for state constitutional claims, and there is no private right of action for asserting such claims.

14

> 1. **There is no private right of action for Nebraska's constitutional provisions on freedom of speech, due process, and equal protection.**

A claim for violation of a state constitutional right cannot be brought under § 1983, which provides a claim only for violations of federal law. Livadas v. Bradshaw, 512 U.S. 107, 132 (1994). Plaintiff has not identified any Nebraska statute analogous to § 1983 which she claims creates a private right of action. Nor does Plaintiff argue for the creation of a Bivens-type claim under Nebraska law. Cf. McKenna v. Julian, 277 Neb. 522, 526–28, 763 N.W.2d 384, 389–90 (2009) (declining to consider whether to extend Bivens to state constitutional claims because provisions did not waive sovereign immunity), abrogated in nonrelevant part by Doe v. Bd. of Regents of Univ. of Nebraska, 280 Neb. 492, 788 N.W.2d 264 (2010).

Thus, Plaintiff would seem to be trying to rely upon the Nebraska Constitution itself to provide a cause of action. A provision of the Nebraska Constitution may only create a private right of action where it is self-executing. See McKenna v. Julian, 277 Neb. 522, 526, 763 N.W.2d 384, 389–90 ("[W]hen a constitutional provision is self-executing, . . . it merely creates a right that does not need further legislative action in order to become operable against nonsovereigns."); McKenney v. Harrison, No. 8:09CV129, 2009 WL 1606458, at *2 (D. Neb. June 3, 2009) (framing inquiry as "whether or not these provisions of the Nebraska Constitution are self-executing, giving rise to a private right of action for damages"). "A constitutional provision is not self-executing" if it does not supply "the means by which such policy or principles are to be carried into effect." Indian Hills Cmty. Church v. Cty. Bd. of Equalization of Lancaster Cty., 226 Neb. 510, 516, 412 N.W.2d 459, 463 (1987).

15

Plaintiff has not cited any specific provision of the Nebraska Constitution. She presumably seeks to rely upon Article I, Section 3, which concerns due process and equal protection, and Article I, Section 5, which concerns freedom of speech. But neither of these articles creates a private right of action. In Pullen v. Novak, 169 Neb. 211, 215–16, 99 N.W.2d 16, 21 (1959), the Nebraska Supreme Court held that a similar constitutional provision, Article I, section 13, "does not create any new rights but is merely a declaration of a general fundamental principle." At least one Nebraska state district court has reached the same holding with regard to Article 1 § 3. McKenna v. Julian, No. 1074304, 2008 WL 6549059 (Neb. Dist. Ct. Jan. 17, 2008), aff'd, 277 Neb. 522, 763 N.W.2d 384 (2009). Like Sections 3 and 13, Section 5 of Article I only states policies and principles and does not supply the means to carry them into effect. Thus, even if Plaintiff's state constitutional claims had merit, there would be no self-effectuating provision to create a private right of action.

### 2.    Any state constitutional claim would be barred by Nebraska's sovereign immunity.

Even if Article 1, Sections 3 and 5 were self-executing, they would not effectuate a waiver of the State of Nebraska's sovereign immunity. The Nebraska Supreme Court has made clear that "the existence of a self-executing constitutional right does not entail waiver of the state's sovereign immunity from suit based upon such a right." McKenna, 277 Neb. at 528–29, 763 N.W.2d at 390. In McKenna, the Nebraska Supreme Court was presented the question of whether Article 1 § 3 of the Nebraska Constitution creates a private right of action. The defendant in that case was the City of Omaha, a political subdivision. Observing that it "strictly construe[s] the [Political Subdivisions Tort Claims Act] in favor of the political subdivision and against the waiver of sovereign immunity," the Nebraska Supreme Court declined to

16

consider the question because such a state constitutional claim would be barred by sovereign immunity in either event. Id. at 527–29, 763 N.W.2d at 389–90.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated November 22, 2021.

BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; HANK BOUND, in his official and individual capacity; and RONNIE GREEN, in his official and individual capacity

By:   s/Andre R. Barry
Andre R. Barry, #22505
Nathan D. Clark, #25857
Jessica K. Robinson, #27380
CLINE WILLIAMS WRIGHT
   JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 U.S. Bank Building
Lincoln, Nebraska 68508-2095
(402) 474-6900
abarry@clinewilliams.com
nclark@clinewilliams.com
jrobinson@clinewilliams.com

17

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the word count of this brief complies with local rule NECivR 7.1(d). The word-count function of Microsoft Word, version 2110, states that this brief, inclusive of all text including the caption, headings, footnotes, and quotations, contains 4,812 words.

s/Andre R. Barry
Andre R. Barry

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed with the clerk using the Court's CM/ECF system, which will send notice of the same to all counsel of record.

s/Andre R. Barry
Andre R. Barry

4874-8869-3507, v. 6