IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COURTNEY LAWTON,<br><br>                              Plaintiff,<br><br>  V.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; HANK BOUNDS, Individually, and RONNIE GREEN, Individually,<br><br>                              Defendants. | CASE NO. 4:21-cv-3162<br><br><br>AMENDED COMPLAINT and REQUEST FOR JURY TRIAL |

COMES NOW the plaintiff, by and through her attorney Vincent M. Powers, and for her cause of action states as follows:

1.      This is an action seeking redress for the violations of constitutionally and statutorily protected rights guaranteed the plaintiff by the First Amendment and Fourteenth Amendment of the United States Constitution as brought pursuant to 42 U.S.C. 1983. Jurisdiction of this court in invoked pursuant to state and federal statutes. This suit was filed in State Court by the Plaintiff and removed to Federal court by the Defendant's. The Supreme Court has addressed in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 152 L.Ed.2d 806 that when a state willingly enters suit in federal court, they waive their right to raise Sovereign Immunity as an affirmative defense.

2.      At all times relevant, the plaintiff Courtney Lawton was a duly enrolled graduate student at the University of Nebraska.

At all times relevant, defendant Hank Bounds was the President of the University of Nebraska. At all times relevant, the University of Nebraska was a land-grant University established in 1869.   The University of Nebraska system is governed by a Board of Regents

consisting of eight voting members.  The Board supervises the general operations and directs all expenditures of the University   of Nebraska at Lincoln as well as other universities within the system.  The Board of Regents of the University of Nebraska is a body corporate that exists and operates by virtue of the constitution and statutes of Nebraska.  Defendant Hank Bounds is sued in his individual capacity.

Defendant Ronnie Green, at all times relevant, was Chancellor at the University of Nebraska – Lincoln and he is sued in his individual capacity.

3.     On or about August 4, 2017, the plaintiff, who was a resident of Lancaster County, Nebraska, received an offer from the defendant Board of Regents of the University of Nebraska to be a non-tenure track Lecturer of English from August 14, 2017, to May 11, 2018. This was a "Special Appointment". Further, she was to receive a salary of $18,240.00. This was a .50 full-time equivalent position. Her responsibilities were 100 percent teaching. She was to teach two courses in the fall semester and two in the spring semester for the 2017-2018 academic year.   Further, she would continue her studies as a graduate student at the University of Nebraska.

4.     On or about August 10, 2017, the plaintiff did accept the University of Nebraska's offer set forth above.

5.     On or about August 25, 2017, the plaintiff protested in the "free speech area" located on the University of Nebraska – Lincoln campus.  The Plaintiff stood in with and spoke to protest of a national political group called "Turning Point USA".

Turning Point USA is a controversial self-designated, conservative not-for-profit political group which is "dedicated to documenting and exposing college professors who discriminate against conservative students, promote Anti-American values and advance leftist propaganda in

the classroom".

As of December 2016, more than 250 university and/or college professors have been added to the professor watch list site.  However, the list of professors contained inaccuracies including professors listed for comments they did not say or reasons such as "simply aggregating" academics who had been subject to news reports.  A university or college professor could be added to the list without any evidence of factual basis to support the claims made on the list.

Further, many have criticized the site as "a threat to academic freedom".  There have been professors who have reported threats made against them because they had been placed on the professor watch list.

The plaintiff, on or about August 25, 2017, along with others, stood in the "free speech area" at or near the student union.  The "free speech area" was so designated by the defendants to allow students and faculty members to engage in their First Amendment right to free speech.

The plaintiff protested Turning Point USA expressing her opinions and views in said designated area, as an individual. This expression was not related to her employment duties.  The plaintiff was expressing concerns regarding the political groups' motives and movement, bringing attention to views opposing those of Turning Point USA.

As an educator, the Plaintiff was regularly required to challenge the thoughts and beliefs of others and develop opinions strong enough to be able to defend.  These values carried over into the personal life of the plaintiff.

A member of Turning Point USA took a video of the plaintiff during the demonstration. The video was publicized by Turning Point USA which resulted in significant publicity and Ms. Lawton began receiving harassment from others as well as persons, including a state senator,

demanding that she be expelled from the University.

6.     On or about August 27, 2017, the plaintiff met with Marco Abel, the Department Chair of the College of Arts and Sciences, Dean Joseph Francisco, Professor Kwakiutl Dreher, Professor Julia Schleck and the Assistant Dean of the College of Arts and Sciences pursuant to their request to gather information regarding the exercise of the plaintiff's First Amendment rights.

7.     On August 28, 2017, Hank Bounds, who was then President of the     University of Nebraska, posted a public message on Twitter criticizing the behavior of the plaintiff as "unprofessional" and "not in keeping with the standards of conduct" of the University.

8.     On or about August 28, 2017, the plaintiff met with the defendant Ronnie Green in his capacity as Chancellor of the University of Nebraska- Lincoln, and other employees of the University of Nebraska-Lincoln. This meeting was to discuss the plaintiff's exercise of her First Amendment rights. At said meeting, the plaintiff was informed by employees of the University of Nebraska-Lincoln that the University had received many angry letters and emails, all of which were critical of the plaintiff.

9.     At the request of the employees of the defendant University of Nebraska-Lincoln, the plaintiff did not make any comments to the media even though there were numerous comments in local media and social media critical of the plaintiff.

10.     The plaintiff agreed to this action as she believed it was being done for her safety and she had no reason at that time to request any further action.  Further, she had been promised that she would retain her position as a lecturer and be able to be involved in teaching duties in the second semester, beginning January 2018.  The plaintiff relied upon the information given to her by the defendants' employees and agents and relied upon said information, all to her

determent.

11.     On or about September 5 and September 6, 2017, investigating officers in the University of Nebraska Police Department informed the plaintiff that they had not seen any active threats to her or her students. Said officers expressed surprise to learn that she had been removed from her teaching duties for security reasons.

12.     On or about September 6, 2017, Steve Smith, a spokesperson for the defendant Board of Regents, released a public statement in the course and scope of his employment with said defendant, which contradicted the agreement and understanding of the meeting on September 5, 2017, and stated that the plaintiff's removal from teaching for the fall semester was due to security but instead the statement referred to the plaintiff's exercise of her free speech rights. Mr. Smith stated, "our expectations for civility were not met by the lecturer in her behavior ... and not representative of the University where the robust free exchange of ideas takes place 24 hours a day, 7 days a week.

13.     On or about September 6, 2017, the plaintiff received a letter from an employee of the defendant Board of Regents placing her on probation. This was an adverse employment action and/or an action adversely affecting the plaintiff's educational opportunities taken by the defendants.

14.     On or about September 13, 2017, the Plaintiff sought guidance from the Chair of the English Department of which she was a member and the Chair of Academic Rights and Responsibilities Committee with respect to the adverse employment action and/or an action adversely affecting plaintiff's educational opportunities on or about September 6, 2017.  She asked what steps she could take to defend herself and to have the adverse employment action and/or an action which adversely affected plaintiff's educational activity. action decision undone.

She specifically requested information on the formal grievance policies. However, the plaintiff was given the impression there were procedures and policies in place that prevented her from taking any further grievance action at this point with respect to the September 6, 2017, adverse employment action and/or an action adversely affecting plaintiff's educational opportunities.

15.     On or about October 24, 2017, the plaintiff had a meeting with defendant Ronnie Green and others to discuss the exercise of her First Amendment rights. At said meeting, the video footage of the plaintiff's exercise of her First Amendment rights was reviewed by those persons who were present. The video footage revealed that the plaintiff did not invade the space of any other student but was involved in the "robust free exchange of ideas" in the free speech zone which was created by the defendants for the purpose of expressing speech.

16.     As of October 24, 2017, the plaintiff was to return to teaching in the Spring 2018 semester.  The plaintiff was to teach 20th Century Fiction and a section of first-year composition.

17.     On or about October 30, 2017, three members of the Nebraska state legislature published an op-ed article in the Hastings, Nebraska Tribune entitled "Five Questions for UNL". Avowing that "as state senators" they had "justifiable reasons to be concerned about the social condition and discriminatory actions of our state's flagship university," they posed five questions, all of which inferred that the University of Nebraska was hostile to    conservative students.  The questions were as follows:

1.     Are professors at UNL hostile toward conservative students?
2.     Are University administrators warm, welcoming, inviting and transparent towards conservative students?
3.     Can the university's administration conduct an honest investigation when a conservative student involved?
4.     Can anyone at the university tell the truth about free speech zones on campus?

     5.     Does anyone teach English anymore at UNL?

Further, the university received open records request from the Nebraska Republican Party which "brought to light email messages from members of the University's public relations staff proposing to have "surrogate(s) submit op-eds" to local papers to defend the administration against critics who accused it of having been too timid in handling Ms. Lawton's case."

    18.    On or about November 17, 2017, Defendant Chancellor Green succumbed to the political pressure placed upon him by the state senators and the Nebraska Republican Party and submitted the aforementioned article to the local newspapers

The intentional publication by defendant Green of the above comments concerning the plaintiff to damage the plaintiff's educational opportunity and her ability to find future employment. This decision to ban the plaintiff from teaching in 2017-2018 and/ or permanently barring the plaintiff from teaching at the UNL in any capacity was done without notice to the plaintiff and without any adjudication hearing, all to her damage, including past, present and future, loss of income, humiliation, anxiety, worry, and mental anguish.

    19.    On or about November 17, 2017, then President Bounds wrote to Governor Pete Ricketts and the speaker of the legislature, Jim Scheer, to assure them that Ms. Lawton would "not be teaching at the University of Nebraska."

This decision to ban the plaintiff from teaching in 2017-2018 and/or permanently barring her from teaching at the UNL in any capacity was done without notice to the plaintiff and without any adjudication hearing. The intentional publication by defendant Bounds of the above comments concerning the plaintiff did cause severe damage to the plaintiff.

    20.    On or about November 17, 2017, during a subsequent meeting with defendant Ronnie Green and other employees of the defendant Board of Regents, Courtney Lawton was

told by defendant Green that she could not return to the classroom because it would be too disruptive to the campus and there would be negative press to the university. This was an adverse employment action and/or an action adversely affecting plaintiff's educational opportunities which has damaged the plaintiff to this date and will continue to damage her into the future. At this meeting, defendant Ronnie Green nor any other employee, officer or agent of the defendant Board of Regents referred to or cited any safety concerns. Rather, the defendant Green and other employees, officers or agents of the defendant Board of Regents with the consent of defendant Green, voiced their concern about negative press and pressure from political forces outside the University of Nebraska system.  On November 20, 2017, the plaintiff was informed that two members of the news media met with defendant Green and at least one of employee of the defendant Board of Regents and were informed that the defendants would not allow the plaintiff to teach at the University of Nebraska- Lincoln in the spring semester in 2018 or ever again.

21.    In January 2018, defendant Board of Regents approved a statement that pledged the University to uphold the First Amendment. Further, the defendant Board of Regents reiterated the University's commitment to freedom of expression. The defendant Board of Regents were aware of the adverse employment action and/or an action adversely affecting plaintiff's educational opportunities taken against the plaintiff; however, took no action to allow Ms. Lawton to return to her teaching duties.  Further, they took no action to give Ms. Lawton any type of adjudication hearing or any other type of due process with respect to the adverse employment action and/or an action adversely affecting plaintiff's educational opportunities taken by the defendants and each of them.

22.    At all times relevant, the University of Nebraska's Bylaws stated that "the termination of an Appointment for a Specific Term prior to its stated termination date, ... the

University shall have the burden of proving adequate cause for the termination by the greater weight of the evidence."

23.     The plaintiff has never given notice of any adjudication hearing by the defendants, nor has the plaintiff ever been offered or received an adjudication hearing by the defendants and each of them.

24.     On or about December 21, 2017, defendant Green informed a third party that it would not provide an adjudication hearing for Ms.  Lawton.  At no time did any of the defendants consult with the University of Nebraska faculty body, including the Academic Freedom and Tenure Committee or the faculty Senate.  Nor at any time did any of the defendants present to anyone any evidence of a threat of immediate harm to the plaintiff or any student should she be allowed to teach.

25.     On or about December 21, 2017, the plaintiff was under the belief that she had exhausted her administrative grievance measures and that there were no other procedures that she could follow.  Further, taking any action would be futile given that the defendants Ronnie Green and Hank Bounds had publicly taken an adverse employment action and/or an action which adversely affected plaintiff's educational activity. action against her by suspending her from teaching in the second semester.

Defendant Ronnie Green, who was Chancellor, had an article published in November 2017 in which he stated that the "(Lawton) will not teach at our university because of (her) inappropriate behavior".

26.     The plaintiff's suspension from teaching, which was only to have been for the fall 2017 semester was extended into the following semester, in violation of her written contract with the defendants and her oral agreement referred to above.

As such, the plaintiff suffered an adverse employment action and/or an action adversely affecting plaintiff's educational opportunities in consequence of her exercising the right to free speech as guaranteed to her by the First Amendment to the Constitution of the United States and the Constitution of the State of Nebraska.

27.     At all times, the plaintiff's teaching prior to her being removed involuntarily from the classroom, was satisfactory.

28.     The defendants and each of them knew or should have known that removing the plaintiff from teaching violated her constitutional rights as set forth above.

29.     At all times relevant, the plaintiff had a property interest in being a lecturer of English as set forth in her Special Appointment referred to above.

30.     Ms. Lawton graduated from the University of Nebraska with her Ph.D. in English in August 2018. However, because she was denied the for future employment were diminished. The plaintiff has mitigated her damages by finding employment but not as a professor at a research university, all to her damage. The plaintiff has suffered past, present and future anxiety, mental anguish, health care expenses, humiliation, inconvenience and loss of income together with other elements of general damages as a proximate result of the actions of the defendants.

31.     The defendants Ronnie Green and Hank Bounds, at all times relevant acting within the scope of their employment with defendant Board of Regents and acting individually, did bar the plaintiff from ever working in the classroom as an instructor, teacher or professor. This action taken by the defendants and each of them was done without notice to the plaintiff, and without any opportunity for a hearing, all in violation of her First and Fourteenth Amendments of the Constitution of the United States.

32.     Due to the willful nature of the defendants' conduct, punitive damages are

appropriate pursuant to the violations arising out of 42 U.S.C. 1983, the Constitution of the United States made applicable to the State of Nebraska pursuant to the Fourteenth Amendment to said Constitution. The actions and each of them violated the plaintiff's right under the First Amendment of the Constitution of the United States and the State of Nebraska to free speech.

33.      In June 2018, the American Association of University Professors (AAUP) did formally censure the University of Nebraska-Lincoln for violating the academic freedom of Courtney Lawton, the plaintiff herein. The University of Nebraska-Lincoln was placed on the AAUP's censure list. The AAUP's investigation of the facts surrounding the plaintiff being removed from teaching in the classroom included "that UNL failed to provide Lawton with the appropriate hearings outlined in university policy and commonly practiced in American institutions of higher education".

Further, the AAUP noted "that while the UNL administrator said the action against Ms. Lawton was neither a suspension or a dismissal, an op-ed pinned by Chancellor Ronnie Green and printed in several newspapers last November proved otherwise, when he stated "(Lawton) will not teach at our university going forward because of (her) inappropriate behavior".

34.      The AAUP found that the defendants refused to afford the plaintiff "a hearing on the substantive grounds for her dismissal".

35.      The Plaintiff believed the exercise of her political speech as an individual in her time away from her job duties would not interfere with her employment with the university. Other similarly situated student lecturers who regularly participate in political speech and activities without repercussions. These similarly situated individuals have participate in like activities and speech, the only difference is they did not make national news headlines.

36.      There have been other instances of political speech by University of Nebraska

male students that have not been disciplined.  In September 2016, three Nebraska male students who participated in football received strong criticism within the State of Nebraska and nationally because they took a "knee" during the National Anthem prior to a Nebraska football game played at Memorial Stadium in Lincoln, Nebraska.

37.    Defendant Bounds did not punish the male students.  Defendant Bounds issued a statement that stated as follows:

> "I have served in the military.  I understand love of country and love of the flag and I know that freedom is not free.  I recognize that some are upset by what they saw on Saturday night.  But let me be clear.  The University of Nebraska will not restrict the First Amendment Right of any student or employee.  Our position on the issue is absolutely clear.  As stated in the Board of Regents policy, which has been in place for almost a half century.  "Members of the academic community have the right to extensive latitude in making their opinions known . . . the public exploration and resolution of differing views can be successful only when groups and individuals discuss the issues, informs where the right to disagree, speak freely and be heard is preserved".

> "The same freedoms that protect the speech of those who have joined the conversation in recent days also protect our students' speech – whether they are kneeling during the National Anthem, holding the American flag on the field, praying after a game or expressing their opinion during class or on campus.  All of that speech fails under the same category.  All of it is protected.

> Our nation is dealing with difficult issues today, as we have for virtually our entire history.  Each of us will react differently.  College campuses as much as any space must be places where robust, even on uncomfortable debate, is welcomed and encouraged."

38.    Further, defendant Ronnie Green took no action against a male student who was described as "a self-proclaimed white nationalist student who appeared in a video saying he loves violence".  Chancellor Green said on or about February 7, 2008 in an email to students, faculty and staff members that while the student's comments are distasteful, no disciplinary

action will be taken because of Daniel Kleve, a junior at the University of Nebraska – Lincoln, constitutional guarantee of free speech.

## COUNT ONE

39.     Plaintiff incorporates Paragraphs 1 through 38 as if fully set forth herein.

40.     Plaintiff was retaliated against by the defendants, and each of them, after she engaged in a protected activity as set forth above. The plaintiff exercised her right to free speech as guaranteed to her by the First Amendment to the Constitution of the United States of America, the Constitution of the State of Nebraska and the Bylaws, policies, practices and procedures of the Board of Regents of the University of Nebraska.

41.     Plaintiff was never given any type of due process hearing prior to retaliatory actions being taken against her by the defendants and each of them.

42.     The defendants, and each of them, knew, or should have known, that teaching in the classroom was significant and important to the plaintiff's education while enrolled at the University of Nebraska.  Further, the defendants, and each of them, knew that the plaintiff had accepted a Special Appointment as a Lecturer of English for the fall and spring semesters of 2017- 2018 at the University of Nebraska - Lincoln campus.

43.     That in retaliation for the plaintiff's exercise of her constitutional rights in the "free speech zone" located at the University of Nebraska - Lincoln, she was not allowed to teach in a classroom in violation of her appointment as a Lecturer of English. Further, the defendants and each of them made public statements critical of the plaintiff, all to her damage in seeking employment.

44.     Due to plaintiff's exercise of her First Amendment rights in the free speech zone created by the defendants, the plaintiff suffered an adverse employment action and/or an action

adversely affecting plaintiff's educational opportunities in which she was barred from teaching. Further, plaintiff received a permanent ban on her ever being able to teach as a lecturer, teacher or professor at the University of Nebraska, all in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Nebraska. As a result of this conduct, the plaintiff suffered damages, including a diminution of the value of her degree from the University of Nebraska, loss of income upon graduation, diminished career opportunities, mental anguish, inconvenience, healthcare expenses and other elements of general damages.

45.    Said actions of the defendants, and each of them, violated the plaintiff's rights under the First Amendment of the Constitution of the United States and the State of Nebraska, all to her damage.

At all times relevant, defendants Ronnie Green and Hank Bounds knew, or should have known, that their actions with respect to the plaintiff violated her constitutional rights. Defendants had made a calculated decision to succumb to the political pressure brought upon them by state senators and the Nebraska Republican Party and therefore took an adverse employment action and/or an action adversely affecting plaintiff's educational opportunities publicly and without any hearing.

At all times relevant, the defendants were aware of the plaintiff's constitutional rights which were clearly established at the time of the adverse employment action and/or an action adversely affecting plaintiff's educational opportunities.  The defendants were aware that the plaintiff exercised her First Amendment right to free speech and to due process with respect to her employment contract and teaching duties with the University.  At the October 25, 2017, meeting with the plaintiff and defendant Green, in which Ms. Lawton was not terminated nor

14

was she permanently removed from future teaching assignments, there was renewed public criticism of each defendant.  Earlier, as of August 29, 2017, state senator Steve Erdman had phoned defendant Green's office demanding Ms. Lawton be terminated.

46.     The defendants and each of them had defended the conduct of the University and the right to have free speech on campus after the three state senators had written the "five questions for UNL" article.  Defendant Green had stated "All at the University have dedicated their careers to furthering education, research, and services to society.  Some faculty have liberal views.  Others have conservative views.  To recklessly and falsely accuse the University as a whole of hostility towards a particular view appears to be an attempt to further political agendas".   Defendant Green went on "the University will not be politicized and will not be used as a pawn.  I find your falsehoods and distortions defamatory and an egregious breach of the trust that Nebraska put in each of us".

The subsequent adverse employment action and/or an action adversely affecting plaintiff's educational opportunities taken by the defendants were done when they knew, or should have known, that they were violating clearly established statutory and constitutional rights to free speech and due process.

47.     The aforementioned unlawful acts violated 42 U.S.C. 1983, the Constitutions of the United States of America and the State of Nebraska as well as amendments thereto.

WHEREFORE, plaintiff respectfully requests this Court assume jurisdiction herein as to all counts alleged and grant the following relief:

a)      Declare the conduct of the defendants to be in violation of the constitution and statutory rights of the plaintiff;

b)      Award the plaintiff monetary damages for lost income together with the monetary

value of the loss of benefits plus accrued interest;

c)      Award the plaintiff compensatory damages for the mental suffering, inconvenience, humiliation, emotional distress and allother general damages available to her under the law in an amount to be determined by a jury of the court;

d)      Award the plaintiff punitive damages under federal law for the violations alleged herein;

e)      Award the plaintiff costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988 and such other and further relief as the Court deems just and reasonable to correct the wrong done to the plaintiff.

## COUNT TWO

48.     Plaintiff incorporates Paragraphs 1 through 47 as if more fully set forth herein.

49.     Plaintiff was suspended and/ or dismissed from her position as a Lecturer of English in the fall and spring semesters of 2017-2018 of the University of Nebraska.

50.     At all times, plaintiff was entitled to due process under the Constitution of the United States and the Constitution of the State of Nebraska.

51.     The defendants have intentionally deprived the plaintiff of a property interest in her employment with the University of Nebraska.

52.     The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

53.     Due to plaintiff's exercise of her First Amendment rights in the free speech zone created by the defendants, the plaintiff suffered an adverse employment action and/or an action adversely affecting plaintiff's educational opportunities in which she was barred from teaching.

Further, plaintiff received a permanent ban on her ever being able to teach as a lecturer, teacher or professor at the University of Nebraska, all in violation of the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Nebraska.

54.     The actions of the defendants and each of them violated the plaintiff's rights pursuant to Fourteenth Amendment of the Constitution of the United States and the Constitution of the State of Nebraska.

55.     Plaintiff suffered damages including a diminution of the value of her degree from the University of Nebraska, loss of income upon graduation, diminished career opportunities, mental anguish, inconvenience and other elements of general damages.

56.     The aforementioned unlawful acts violated 42 U.S.C. 1983, the Constitutions of the United States of America and the State of Nebraska as well as amendments thereto.

WHEREFORE, plaintiff respectfully requests this Court assume jurisdiction herein as to all counts alleged and grant the following relief:

a)      Declare the conduct of the defendants to be in violation of the constitution and statutory rights of the plaintiff;

b)      Award the plaintiff monetary damages for lost income together with the monetary value of the loss of benefits plus accrued interest;

c)      Award the plaintiff compensatory damages for the mental suffering, inconvenience, humiliation, emotional distress and all other general damages available to her under the law in an amount to be determined by a jury of the court;

d)      Award the plaintiff punitive damages under federal law for the violations alleged

herein;

e)      Award the plaintiff costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988 and such other and further relief as the Court deems just and reasonable to correct the wrong done to the plaintiff.

## COUNT THREE

57.      Plaintiff incorporates Paragraphs 1 through 56 as if more fully set forth herein.

58.      Due to plaintiff's exercise of her First Amendment rights in the free speech zone created by the defendants; the plaintiff suffered an adverse employment action and/or an action adversely affecting plaintiff's educational opportunities in which she was barred from teaching. Further, plaintiff received a permanent ban on her ever being able to teach as a lecturer, teacher or professor at the University of Nebraska, all in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Nebraska.

59.      Other students who exercised their First Amendment Rights set forth above were not disciplined nor was any adverse action was taken against the aforementioned students, whether it was to terminate scholarship money or to otherwise affect their ability to attend the University of Nebraska – Lincoln.

60.      Ms. Lawton's status as a student was adversely affected by her not being able to participate in classroom teaching she that she did not receive her the full benefit of her education and damaged her future employment prospects as set forth herein.

61.      Upon information and belief, no other person has ever been removed from teaching and/ or permanently banned from employment as an instructor, teacher or professor at the University of Nebraska without any type of adjudication hearing.

62.     The aforementioned unlawful acts violated 42 U.S.C. 1983, the Constitutions of the United States of America, the State of Nebraska as well as amendments thereto.

WHEREFORE, plaintiff respectfully requests this Court assume jurisdiction herein as to all counts alleged and grant the following relief:

a)     Declare the conduct of the defendants to be in violation of the constitution and statutory rights of the plaintiff;

b)     Award the plaintiff monetary damages for lost income together with the monetary value of the loss of benefits plus accrued interest;

c)     Award the plaintiff compensatory damages for the mental suffering, inconvenience, humiliation, emotional distress and all other general damages available to her under the law in an amount to be determined by a jury of the court;

d)     Award the plaintiff punitive damages under federal law for the violations alleged herein;

e)     Award the plaintiff costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988 and such other and further relief as the Court deems just and reasonable to correct the wrong done to the plaintiff.

### COUNT FOUR

63.     Plaintiff incorporates Paragraphs 1 through 62 as if more fully set forth herein.

64.     Due to plaintiff's gender as a woman, exercising her first amendment right; the plaintiff suffered an adverse employment action and/or action adversely affecting her educational opportunities, in which she was barred from teaching. Further, plaintiff received a permanent ban on her ever being able to teach as a lecturer, teacher or professor at the University of Nebraska,

all in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Nebraska.

65.    Other students, who were male exercised their First Amendment Rights as set forth above were not disciplined nor was any adverse action was taken against the aforementioned students, whether it was to terminate scholarship money or to otherwise affect their ability to attend the University of Nebraska – Lincoln.

66.    Ms. Lawton's status as a student was adversely affected by her not being able to participate in classroom teaching which did not give her the full benefit of her education and damaged her future employment prospects as set forth herein.

67.    Upon information and belief, no male of similarly situated status has been given this level of disciplinary action without an adjudicative hearing.

68.    This gender discrimination was purposeful.  This violation of her constitutional rights continued until her graduation on August 28, 2018.

69.    Hank and Ronnie Green in their individual capacities knowingly infringed on the plaintiffs clearly established constitutional and statutory rights.

70.    The aforementioned unlawful acts violated 42 U.S.C. 1983, the Constitutions of the United States of America, the State of Nebraska as well as amendments thereto.

WHEREFORE, plaintiff respectfully requests this Court assume jurisdiction herein as to all counts alleged and grant the following relief:

a)    Declare the conduct of the defendants to be in violation of the constitution and statutory rights of the plaintiff;

b)    Award the plaintiff monetary damages for lost income together with the monetary value of the loss of benefits plus accrued interest;

c)      Award the plaintiff compensatory damages for the mental suffering,

inconvenience, humiliation, emotional distress and all other general damages

available to her under the law in an amount to be determined by a jury of the

court;

d)      Award the plaintiff punitive damages under federal law for the violations alleged

herein;

e)      Award the plaintiff costs and reasonable attorney's fees pursuant to 42 U.S.C.

1988 and such other and further relief as the Court deems just and reasonable to

correct the wrong done to the plaintiff.

COURTNEY LAWTON, Plaintiff


_____
Vincent M. Powers #15866
POWERS LAW
411 South 13th Street, Suite 300
PO Box 84936
Lincoln, NE 68501-8946
402/ 474-8000
powerslaw@me.com



REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial to be held in the Lincoln, Lancaster County, Nebraska.


_____