IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COURTNEY LAWTON, | |
| Plaintiff, | **4:21CV3162** |
| vs. | |
| BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, HANK BOUNDS, Individually; and RONNIE GREEN, Individually, | **MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

In this case, a graduate student and lecturer of English at a state university alleges that the university's response to her participation in an on-campus protest violated her rights under the state and federal constitutions. This case comes before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint seeking dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Filing 25.

The Court grants Defendants' Motion to Dismiss. First, Plaintiff's claims alleging violations of unspecified portions of the Nebraska Constitution must be dismissed as to all Defendants for failure to state claims that are cognizable under 42 U.S.C. § 1983 and Nebraska law. Second, sovereign immunity under the Eleventh Amendment bars all of Plaintiff's federal constitutional claims against the Defendant Board of Regents, and it also bars Plaintiff's prayers for declaratory relief against the individual Defendants. Third, Plaintiff has not pleaded the personal involvement of one of the individual Defendants in alleged federal constitutional violations so that her claims against him must all be dismissed for failure to state a claim on which relief can be granted. Fourth, notwithstanding Plaintiff's assertion that she has alleged in her

1

Amended Complaint "copious and detailed facts" supporting her federal constitutional claims, the Court concludes that she has, at most, alleged facts consistent with the remaining individual Defendant's liability but well short of the line between possibility and plausibility.

## I.   INTRODUCTION

### A.  Factual Background[1]

*1.  The Parties and the Incident*

At all relevant times, Plaintiff Courtney Lawton was a graduate student and a Lecturer of English at the University of Nebraska-Lincoln (UNL). Filing 23 at 1–2. Defendant Board of Regents (the Board) is the governing body of the University of Nebraska system and a corporate body that operates "by virtue of the constitution and statutes of Nebraska." Filing 23 at 2. At the relevant times, Defendant Hank Bounds was President of UNL, and Defendant Ronnie Green was (and still is) the Chancellor of UNL. Filing 23 at 1–2.

On August 4, 2017, the Board of Regents offered Lawton a "Special Appointment" as a Lecturer of English from August 14, 2017 to May 11, 2018. Filing 23 at 2. Lawton was to be paid a salary of $18,240 for this half-time position, and she alleges that her duties were to be "100 percent teaching." Filing 23 at 2. She accepted the Board's offer on August 10, 2017. Filing 23 at 2.

---

[1] Because this case is before the Court on a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court must accept Plaintiff's factual allegations in her Amended Complaint, Filing 23, as true. *See, e.g., Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (explaining that, on a facial challenge to subject matter jurisdiction, the Court must accept as true all facts alleged in the complaint and "consider only the materials that are necessarily embraced by the pleadings and exhibits to the complaint"); *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (explaining that, to determine whether a complaint states a claim on which relief can be granted, a court "must determine whether [the] complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" (quoting *Braden v. WalMart Stroes, Inc*., 588 F.3d 585, 594 (8th Cir. 2009)). Although the Court may also "rely on materials 'necessarily embraced by the pleadings,' including exhibits attached to the complaint and matters of public record," *Buckley v. Hennepin Cty.*, 9 F.4th 757, 760–61 (8th Cir. 2021) (quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)), no materials were attached to the Amended Complaint and the parties have not requested that the Court look beyond the Amended Complaint itself.

On August 25, 2017, eleven days after the start of her appointment as a Lecturer, Lawton "protested in the 'free speech area' located on the [UNL] campus," that is, she "stood in with and spoke to protest of [sic] a national political group called 'Turning Point USA.'" Filing 23 at 2. According to Lawton, Turning Point USA is "dedicated to documenting and exposing college professors who discriminate against conservative students, promote Anti-American values and advance leftist propaganda in the classroom." Filing 23 at 2-3. Turning Point USA seeks to accomplish its mission in part by maintaining a list of offending professors on a "watch list site." Filing 23 at 3. According to Lawton, "many have criticized the site as 'a threat to academic freedom.'" Filing 23 at 3. Lawton alleges that she protested Turning Point USA by "expressing concerns regarding the political groups' [sic] motives and movement, bringing attention to views opposing those of Turning Point USA." Filing 23 at 3. A member of Turning Point USA recorded video of Lawton at the protest. Filing 23 at 3. Turning Point USA then published the video. Filing 23 at 3. The video is not part of the record, however.

### 2.   *The Immediate Aftermath*

Lawton alleges that publication of the video "resulted in significant publicity and [she] began receiving harassment from others as well as persons, including a state senator, demanding that she be expelled from [UNL]." Filing 23 at 3–4. She also alleges that on August 28, 2017, then-President Hank Bounds posted a public message on Twitter criticizing her behavior as "unprofessional" and "not in keeping with the standards of conduct" of UNL. Filing 23 at 4.

On August 27, 2017, Lawton met with faculty members from the UNL College of Arts and Sciences, "pursuant to their request to gather information regarding the exercise of [her] First Amendment rights." Filing 23 at 4. Similarly, on or about August 28, 2017, Lawton met with Chancellor Green and other employees of UNL "to discuss [her] exercise of her First Amendment

rights." Filing 23 at 4. During that meeting Lawton was informed that UNL "had received many angry letters and emails, all of which were critical of [her]." Filing 23 at 4. Lawton alleges that, "[a]t the request of employees of [UNL]," she did not make any comments to the media, because she believed the request was for her safety. Filing 23 at 4.

Lawton alleges "she had been promised that she would retain her position as a lecturer and [would] be able to be involved in teaching duties in the second semester, beginning January 2018." Filing 23 at 4. This allegation at least implies that Lawton understood that she would not be teaching the remainder of the Fall 2017 semester. Lawton does not allege when a promise was made that she would be teaching again in January 2018, who made it, or who, if anyone, told her she would not be teaching the remainder of the Fall 2017 semester.

Lawton does allege, however, that on September 6, 2017, a spokesperson for the Board released a statement that "contradicted the agreement and understanding of the meeting on September 5, 2017." Filing 23 at 5. There are no other allegations in the Amended Complaint about a "meeting on September 5, 2017," who attended such a meeting, or what was agreed during that meeting. Lawton quotes the public statement made on September 6, 2017, as stating, "[O]ur expectations for civility were not met by the lecturer in her behavior . . . and not representative of [UNL] where the robust free exchange of ideas takes place 24 hours a day, 7 days a week." Filing 23 at 5 (ellipses in original). Lawton alleges this statement demonstrates that her removal from teaching for the fall semester was not owing to security concerns, but instead "referred to [her] exercise of her free speech rights." Filing 23 at 5. Lawton alleges that on or about September 6, 2017, she also "received a letter from an employee of the [Board] placing her on probation," which she alleges was "an adverse employment action and/or an action adversely affecting [her] educational opportunities." Filing 23 at 5. Lawton does not allege who the employee of the Board

4

was who placed her on "probation," what was the nature of that "probation," or how long that "probation" was to last.

On September 13, 2017, Lawton "sought guidance" from the chair of her department at UNL during which she asked the chair "what steps she could take to defend herself and to have the [adverse] action decision undone." Filing 23 at 5. Lawton does not allege what she was told by her department chair. She alleges that she "was given the impression there were procedures and policies in place that prevented her from taking any further grievance action at this point with respect to the September 6, 2017, adverse employment action and/or an action adversely affecting [her] educational opportunities." Filing 23 at 6.

### 3. Subsequent Events

As of October 24, 2017, Lawton understood that she was to return to teaching in the Spring 2018 semester. Filing 23 at 6. On or about October 24, 2017, Lawton had a meeting with Chancellor Green "and others," which Lawton alleges was "to discuss the exercise of her First Amendment rights." Filing 23 at 6. At that meeting, those present viewed the video of the August 25, 2017, incident. Filing 23 at 6. Lawton alleges the video "revealed that [she] did not invade the space of any other student but was involved in the 'robust free exchange of ideas' in the free speech zone which was created by the defendants for the purpose of expressing speech." Filing 23 at 6. Lawton does not allege any outcome of that meeting.

On October 30, 2017, three members of the Nebraska Unicameral published an editorial in a Hastings, Nebraska, newspaper. Lawton alleges that editorial "pos[ed] five questions, all of which inferred [sic] that [UNL] was hostile to conservative students." Filing 23 at 6. The questions were the following:

1. Are professors at UNL hostile toward conservative students?

2.  Are University administrators warm, welcoming, inviting and transparent towards conservative students?

3.  Can the university's administration conduct an honest investigation when a conservative student [is] involved?

4.  Can anyone at the university tell the truth about free speech zones on campus?

5.  Does anyone teach English anymore at UNL?

Filing 23 at 6–7. Lawton also alleges that "the university received [an] open records request from the Nebraska Republican Party which 'brought to light email messages from members of the University's public relations staff proposing to have "surrogate(s) submit op-eds" to local papers to defend the administration against critics who accused it of having been too timid in handling Ms. Lawton's case.'" Filing 23 at 7 (no citation for quotations provided).

Lawton alleges, next,

On or about November 17, 2017, Defendant Chancellor Green succumbed to the political pressure placed upon him by the state senators and the Nebraska Republican Party and submitted the aforementioned article [sic] to the local newspapers.

The intentional publication by defendant Green of the above comments [sic] concerning the plaintiff [was] to damage the plaintiff's educational opportunity and her ability to find future employment. This decision to ban the plaintiff from teaching in 2017-2018 and/or permanently barring the plaintiff from teaching at the UNL in any capacity was done without notice to the plaintiff and without any adjudication hearing, all to her damage, including past, present and future, loss of income, humiliation, anxiety, worry, and mental anguish.

Filing 23 at 7. These paragraphs of the Amended Complaint do not allege who made a decision to ban Lawton from teaching for the entire academic year 2017-2018 or "permanently" or when Chancellor Green published any comments. The Amended Complaint alleges elsewhere that Chancellor Green "had an article published in November 2017 in which he stated that the [sic]

6

'(Lawton) will not teach at our university because of (her) inappropriate behavior.'" Filing 23 at 9.

Lawton alleges that on or about November 17, 2017, then-President Bounds wrote Governor Pete Ricketts and the Speaker of the Legislature "to assure them that Ms. Lawton would 'not be teaching at [UNL],'" which also allegedly caused her "severe damage." Filing 23 at 7. On or about November 17, 2017, Lawton had a meeting with Chancellor Green and other employees of the Board at which Chancellor Green told Lawton "that she could not return to the classroom because it would be too disruptive to the campus and there would be negative press to the university," which also allegedly damaged her. Filing 23 at 7–8. Lawton alleges that, on November 20, 2017, she "was informed that two members of the news media met with defendant Green and at least one of employee [sic] of the defendant Board of Regents and were informed that the defendants would not allow the plaintiff to teach at the University of Nebraska-Lincoln in the spring semester in 2018 or ever again." Filing 23 at 8.

### 4. Lack of Administrative Proceedings

Lawton alleges that the UNL Bylaws state that before "the termination of an Appointment for a Specific Term prior to its stated termination date, . . . the University shall have the burden of proving adequate cause for the termination by the greater weight of the evidence." Filing 23 at 8–9. Lawton alleges that she never received notice of nor received an adjudication hearing. Filing 23 at 9. Lawton also alleges that, on or about December 21, 2017, Chancellor Green informed an unidentified third party that UNL would not provide an adjudication hearing for Lawton. Filing 23 at 9. She alleges further that Defendants never consulted the UNL "faculty body," including the Academic Freedom and Tenure Committee, or the faculty Senate. Filing 23 at 9. Also, Defendants never presented to anyone any evidence of a threat of immediate harm to Lawton or any student if

7

she were allowed to teach. Filing 23 at 9. Lawton alleges that in December 2017, she was under the belief that she had exhausted her administrative grievance measures and that any action she might take to try to pursue the issue would be futile in light of public statements by then-President Bounds and Chancellor Green. Filing 23 at 9.

Notably, nowhere in her Amended Complaint does Lawton allege that she was in fact terminated rather than simply removed from teaching duties, that she was not given other duties instead of teaching, or that she was not paid the salary specified in her contract. She alleges that her "suspension from teaching" was only supposed to be for the Fall 2017 semester, but that it was extended into the following semester in violation of her written contract and the oral agreement she allegedly had with Defendants. Filing 23 at 9. She also alleges that, at all times prior to "being removed involuntarily from the classroom," her teaching was satisfactory. Filing 23 at 10.

### 5. Other Allegedly Comparable Instances of Political Speech at UNL

Lawton alleges that there have been other instances of political speech by male students at UNL that did not result in discipline. Filing 23 at 11–12. Lawton alleges that in September 2016, three male students who participated in football were criticized in the state and nationally "because they took a 'knee' during the National Anthem prior to a Nebraska football game played at Memorial Stadium in Lincoln, Nebraska," but they were not punished. Filing 23 at 12. Instead, then-President Bounds published a statement reaffirming UNL's dedication to First Amendment rights of its students and employees. Filing 23 at 12. Lawton also points to a case in which Chancellor Green "took no action against a male student who was described as 'a self-proclaimed white nationalist student who appeared in a video saying he loves violence,'" because the student had a constitutional guarantee of free speech. Filing 23 at 12–13.

8

6. *Alleged Continuing Injury*

Lawton graduated from UNL with her Ph.D. in English in August 2018. Filing 23 at 10. Nevertheless, she alleges that her future employment prospects were diminished by Defendants' actions. Filing 23 at 10. Although she has found other employment, it is not as a professor at a "research university." Filing 23 at 10. She alleges that she also has suffered and continues to suffer "anxiety, mental anguish, health care expenses, humiliation, inconvenience and loss of income together with other elements of general damages as a proximate result of the actions of the defendants." Filing 23 at 10.

## B. Procedural Background

Lawton filed suit in this Court on August 26, 2021, seeking redress pursuant to 42 U.S.C. § 1983 for alleged violations of constitutionally and statutorily protected rights guaranteed to her by the First and Fourteenth Amendments to the United States Constitution. Filing 1. Lawton named as Defendants the Board, then-President Bounds, and Chancellor Green, alleging that she was suing the individual Defendants in both their individual and official capacities. Filing 1. On November 22, 2021, Defendants filed their first Motion to Dismiss. Filing 16. In response, on January 10, 2022, Lawton filed an Amended Complaint, which is now the controlling pleading. Filing 23. On January 11, 2022, the Court entered a text order denying Defendants' first Motion to Dismiss as moot in light of the filing of Lawton's Amended Complaint. Filing 24.

The Amended Complaint again seeks redress pursuant to 42 U.S.C. § 1983 for alleged violations of constitutionally and statutorily protected rights guaranteed to Lawton by the First Amendment and Fourteenth Amendment to the United States Constitution against the same Defendants. Filing 23 at 1. The Amended Complaint asserts claims against Bounds and Green only in their individual capacities, however. Filing 23 at 1.

9

Notwithstanding the opening paragraph of the Amended Complaint, Filing 23 at 1, there are no claims of statutory violations to be found in the Amended Complaint,[2] although there are claims of violations of the Nebraska Constitution as well as the United States Constitution. Specifically, in Count One of the Amended Complaint, Lawton asserts a claim of free speech retaliation in violation of the First Amendment to the United States Constitution, the Nebraska Constitution, and the Bylaws, policies, practices, and procedures of the Board of Regents of the University of Nebraska by not allowing her to teach in a classroom in violation of her appointment as a Lecturer in English. Filing 23 at 13. In Count Two, Lawton asserts Defendants deprived her of a property interest in her employment with UNL without an opportunity to be heard at a meaningful time and in a meaningful manner in violation of her due process rights under the United States Constitution and the Nebraska Constitution. Filing 23 at 16.[3] In Count Three, Lawton alleges

---

[2] Each of Lawton's claims alleges that the unlawful acts at issue also "violated 42 U.S.C. § 1983." Filing 23 at 15, 17, 19, and 20. Of course, one cannot "violate" § 1983. As United States District Judge C.J. Williams of the Northern District of Iowa recently explained,

> Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Nevertheless, Title 42, United States Code, Section 1983 provides no substantive rights. See *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Id.* at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. See *West v. Atkins*, 487 U.S. 42, 48 (1988).

*McDowell v. Anamosa State Penitentiary*, No. 22-CV-1-CJW-KEM, 2022 WL 1202760, at *3 (N.D. Iowa Apr. 22, 2022).

[3] The Court understands this claim to allege a due process violation. Filing 23 at 16. However, there is also an allegation suggesting an Equal Protection Clause violation. Filing 23 at 16–17. To the extent Count Two alleges an equal protection violation, it appears to be duplicative of the equal protection violation alleged in Count Three. Filing 23 at 18.

that she suffered adverse employment action and/or an action adversely affecting her educational opportunities in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Nebraska Constitution, where other students who exercised their First Amendment rights were not disciplined or subjected to adverse action. Filing 23 at 18. Finally, in Count Four, Lawton alleges another violation of her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Nebraska Constitution based on allegations that she was disciplined differently than other students on the basis of her sex. Filing 23 at 19-20. On each of her claims, Lawton seeks declaratory relief, damages for lost income and lost benefits, compensatory damages for mental suffering, punitive damages, and attorney's fees and costs. Filing 23 at 15–16, 17–18, 19, 20–21.

On January 24, 2022, Defendants filed the Motion to Dismiss now before the Court seeking dismissal of all of Lawton's claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and/or Rule 12(b)(6) for failure to state a claim. Filing 25. With respect to jurisdiction, Defendants argue that the Eleventh Amendment bars Lawton's claims against the Board of Regents and the individual Defendants in their official capacities, as well as any claim for declaratory judgment. Filing 25 at 1; Filing 26 at 2. They also argue that Lawton has failed to plead claims on which relief can be granted as to her claims under the First Amendment, the Due Process Clause, and the Equal Protection Clause. Filing 25 at 1; Filing 26 at 2. Finally, Defendants argue that Lawton has failed to state claims for violations of the Nebraska Constitution, because there is no private right of action for such violations, and if there were, such claims would also be barred by sovereign immunity. Filing 25 at 1; Filing 26 at 2. Lawton filed her Brief in Opposition on February 10, 2022, Filing 27, and Defendants filed their Reply Brief on February 17, 2022, Filing 28.

## II.  LEGAL ANALYSIS

### A.  Applicable Standards

Defendants' arguments concerning lack of subject matter jurisdiction rely on Eleventh Amendment immunity. "Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)). Similarly, sovereign immunity—of which the Eleventh Amendment is one "exemplification"—"'is the privilege of the sovereign not to be sued without its consent.'" *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (quoting *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011)). Thus, "[t]he Eleventh Amendment establishes a general prohibition of suits in federal court by a citizen of a state against his state or an officer or agency of that state," although there are exceptions. *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).

Nevertheless, the Eleventh Amendment's "general prohibition of suits in federal court . . . against [a] state" does not mean that Eleventh Amendment immunity is a ground for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The Supreme Court observed in 1998 that it had not decided whether Eleventh Amendment immunity is a matter of subject matter jurisdiction. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998). It has not decided the question since. The question appears equally unsettled in the Eighth Circuit.

More specifically, both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that Eleventh Amendment immunity is different from other limitations on the subject matter jurisdiction of the federal courts. *See, e.g., Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n.19 (1982) ("[B]ecause of the importance of state law in analyzing Eleventh Amendment questions and because the State may, under certain circumstances, waive

this defense, we have never held that it is jurisdictional in the sense that it must be raised and decided by this Court on its own motion."); *Church*, 913 F.3d at 742 (concluding that the State of Missouri had waived Eleventh Amendment immunity by removing the case to federal court). Furthermore, as stated above, the Eighth Circuit Court of Appeals has at least upon occasion referred to the Eleventh Amendment as a "general prohibition" on certain kinds of suits in federal courts, not as depriving federal courts of subject matter jurisdiction over such suits. *See, e.g., 281 Care Comm.*, 638 F.3d at 632.

On the other hand, Rule 12(b)(6), which authorizes dismissal for failure to state a claim, permits dismissal when a claim is not cognizable under applicable law. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible. It appears to this Court that dismissal for failure to state a claim under Rule 12(b)(6) is appropriate for a claim that is not legally cognizable because it is barred by Eleventh Amendment immunity.

Defendants also seek dismissal of Lawton's constitutional claims on grounds that are more typical of Rule 12(b)(6) motions. Those grounds are challenges to the sufficiency of the factual

allegations offered to state the claims. Filing 26 at 2. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).

Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622

(8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

The Court will apply these standards to Lawton's state constitutional claims and her federal constitutional claims in turn.

### B.  Claims for Violations of the Nebraska Constitution are Not Cognizable

Although they are the last arguments Defendants assert, the Court will consider first Defendants' arguments for dismissal of Lawton's claims for violations of the Nebraska Constitution. Defendants argue that Eleventh Amendment immunity bars claims pursuant to 42 U.S.C. § 1983 seeking compliance of state defendants with state law. They also argue that a state constitutional claim cannot be brought under § 1983, because that statute only provides a vehicle for claims for violations of federal law. Furthermore, defendants argue that there is no private right of action against state officials for violations of the provisions of the Nebraska Constitution at issue here. Lawton offers no response to this part of Defendants' Motion to Dismiss.

The Court agrees with Defendants that Lawton's claims for violations of the Nebraska Constitution are not cognizable. First, 42 U.S.C. § 1983 is not applicable to claims that a state's constitution has been violated. *See, e.g., Preston v. City of Pleasant Hill*, 642 F.3d 646, 650 (8th Cir. 2011) ("A plaintiff may not bring a state claim under the aegis of § 1983."). Additionally, Nebraska's Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-902, provides that neither

a political subdivision nor its officers, agents, or employees can be sued for any tort claim except in specified circumstances not applicable here. *See also* Neb. Rev. Stat. § 13-910 (identifying suits that may be brought against political subdivisions or their agents). Further, the Nebraska statute authorizing suits for violations of the Nebraska Constitution, Neb. Rev. Stat. § 20-148, specifically exempts political subdivisions and officers of political subdivisions. *See also McKenna v. Julian*, 763 N.W.2d 384, 390-91 (Neb. 2009) (dismissing state constitutional claims against an Omaha police officer as barred by sovereign immunity, noting "§ 20–148, unlike § 1983, explicitly prohibits actions based on constitutional violations against a political subdivision."), *abrogated on other grounds by Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264 (Neb. 2010); *see also Cole v. Clarke*, 598 N.W.2d 768, 772 (Neb. Ct. App. 1999) ("Section 20–148 provides a private cause of action for 'deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska' by a private employer. This section does not apply to individuals acting in their capacities as public officials.").

Thus, Lawton's claims brought under unspecified portions of the Nebraska Constitution must be dismissed as to all Defendants for failure to state claims cognizable under § 1983 or Nebraska law. *Couzens*, 854 F.3d at 517 (dismissal for failure to state a claim is appropriate for claims that are not cognizable under applicable law).

In contrast, claims of violations of the United States Constitution by state actors can ordinarily be brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (explaining that § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."). Here, however, Lawton's federal constitutional claims pursuant to § 1983 fail for various reasons.

16

### C.  Sovereign Immunity Bars Federal Constitutional Claims and Declaratory Relief Against Certain Defendants

The Court concludes that all of Lawton's federal constitutional claims against the Board of Regents are barred by Eleventh Amendment sovereign immunity. The Court also concludes that Lawton's prayers for declaratory relief on the federal constitutional violations against the individual Defendants are barred by Eleventh Amendment sovereign immunity.

#### 1.   *The Board of Regents Has Sovereign Immunity to Lawton's Claims*

Defendants argue that the Board of Regents has sovereign immunity under the Eleventh Amendment to all of Lawton's claims. Filing 26 at 5. Defendants also seek dismissal on this ground of Lawton's claims against Bounds and Green in their official capacity. Filing 25 at 1. The Amended Complaint does not repeat the allegation that claims are brought against Bounds and Green in their official capacities, however, so such official capacity claims are no longer at issue. *Compare* Filing 23 at 1, *with* Filing 1 at 1. Defendants point out that Lawton attempts to evade the Board's sovereign immunity by alleging in her Amended Complaint that Defendants waived that immunity by removing this case to federal court, Filing 23 at 1, but Lawton actually commenced this action in federal court. Filing 26 at 6 (citing Filing 1).

In her Opposition Brief, Lawton acknowledges that she incorrectly pleaded in her Amended Complaint that this action was initially filed in state court and removed to federal court by Defendant, when this action was originally filed in federal court. Filing 27 at 2. She makes no argument that her federal constitutional claims against the Board are not prohibited by Eleventh Amendment immunity. The Court agrees with Defendants that such claims are barred by Eleventh Amendment immunity.

17

The Nebraska Supreme Court has made clear that "[t]he Board of Regents . . . [is] entitled to sovereign immunity and do[es] not qualify as [a] 'person[ ]' under § 1983." *Potter v. Bd. of Regents of the Univ. of Neb.*, 844 N.W.2d 741, 749–50 (Neb. 2014); *Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264, 292 (Neb. 2010) ("[T]he Board [of Regents] and [the University of Nebraska Medical Center] are state agencies entitled to state sovereign immunity."), *overruled on other grounds by Davis v. Nebraska*, 902 N.W.2d 165 (Neb. 2017). This immunity extends to claims for declaratory relief against the Board. *See Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("While under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies.").

Because the Board has Eleventh Amendment immunity to all of Lawton's federal constitutional claims, those claims against the Board are not cognizable and must be dismissed for failure to state a claim. *Couzens*, 854 F.3d at 517 (dismissal for failure to state a claim is appropriate for claims that are not cognizable under applicable law). Thus, the Board will be dismissed from this case as Lawton has not asserted any viable claims against the Board.

### 2. Both Individual Defendants Have Sovereign Immunity to Lawton's Prayers for Declaratory Relief

The next issue of sovereign immunity involves Lawton's prayers for declaratory relief. Lawton seeks declaratory relief as well as damages on each of her federal constitutional claims against Bounds and Green, who are sued only in their individual capacities. Defendants argue that a declaratory judgment establishing past liability of a state employee is prohibited by the Eleventh Amendment. Filing 26 at 6. They contend that Lawton only seeks a declaration concerning past

18

conduct, so claims for declaratory relief against Bounds and Green are subject to dismissal with prejudice. Filing 26 at 6. It does not appear that Lawton ever responded to this argument.[4]

The applicability of Eleventh Amendment immunity to claims for declaratory relief against these individuals involves a somewhat different analysis from the one just above as to the Eleventh Amendment immunity of the Board. As the Eighth Circuit Court of Appeals has explained,

> In Ex parte *Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court recognized sovereign immunity does not bar "certain suits seeking declaratory and injunctive relief against state officers in their individual capacities" based on ongoing violations of federal law. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). The Ex parte Young doctrine rests on the premise "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011).

*Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th Cir. 2019); *see also Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) ("[A] declaratory judgment . . . against future retaliation . . . is the sort of prospective relief that can be sought in federal court from state officials sued in their official capacities, notwithstanding the state's sovereign immunity, under *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)."). On the other hand, "retrospective declaratory relief cannot be granted as "[t]he Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past." *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019) (internal quotation marks and citations omitted).

Although Lawton alleges some kinds of continuing harm from the individual Defendants' actions, she does not allege any "ongoing violations" of the United States Constitution. *See Kodiak*

---

[4] Lawton argues that Bounds does not have "qualified immunity" to her claims. Filing 27 at 8. She does not address any issue of immunity as to Chancellor Brown. Defendants do not raise the issue of "qualified immunity" as to either individual Defendant, as they point out in their Reply Brief. Filing 28 at 3.

*Oil & Gas*, 932 F.3d at 1131. As relief on each Count in her Amended Complaint, Lawton prays, *inter alia*, that the Court "[d]eclare the conduct of the defendants to be in violation of the constitutional and statutory rights of the plaintiff." *See* Filing 23 at 15, 17, 19, and 20. This is a prayer for "retrospective declaratory relief," because all the conduct at issue occurred in the past; thus, this prayer cannot be granted because of Eleventh Amendment immunity. *Just. Network Inc.*, 931 F.3d at 764.

Under these circumstances, Lawton's claims for declaratory relief against the individual Defendants are not cognizable and must be dismissed for failure to state a claim. *Couzens*, 854 F.3d at 517 (dismissal for failure to state a claim is appropriate for claims that are not cognizable under applicable law). What remains for the Court to determine is whether Lawton's federal constitutional claims for damages are viable.

### D.  Lawton Fails to Plead Federal Constitutional Claims on Which Relief Can be Granted

Defendants contend that Lawton's claims for damages for federal constitutional violations against the remaining individual Defendants fail to state claims on which relief can be granted. Filing 26 at 8. Lawton asserts that "[D]efendants' arguments in their brief ignore the copious and detailed facts laid out in the 21 page Amended Complaint." Filing 27 at 3; *see also* Filing 27 at 4 (referring to her "detailed factual allegations" in the Amended Complaint); Filing 27 at 19 (same). Copious Lawton's allegations may be, but detailed they are not. More importantly, the Court concludes that Lawton's factual allegations are not "enough to raise a right to relief above the speculative level," even "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

20

1. *Lawton Does Not Plausibly Allege Defendant Bounds's Involvement in Any Constitutional Violations*

Defendants argue that Lawton's federal constitutional claims for damages against Bounds in his individual capacity should be dismissed because Lawton has not plausibly alleged his personal involvement in any alleged constitutional deprivations. Filing 26 at 7. They assert that Bounds's general supervisory role is not sufficient to establish his liability, because *respondeat superior* is inapplicable to § 1983 actions. Filing 26 at 7. Lawton argues that she has alleged sufficient basis for Bounds's individual liability. Filing 27 at 7. She points to her allegations that Bounds posted a public message on Twitter characterizing her conduct as "unprofessional" and "not in keeping with standards of conduct" of UNL and that he wrote Governor Ricketts and the Speaker of the Nebraska Legislature to advise them that Lawton would no longer be teaching at UNL. Filing 27 at 7–8. Defendants reply that Lawton has not brought claims for tweets or letters expressing opinions critical of her. Filing 28 at 2. They add that expression of those opinions does not give rise to a plausible inference that Bounds was personally involved in any alleged violation of Lawton's rights. Filing 28 at 2–3.

Lawton has not pleaded sufficient factual basis to raise plausible inferences that Bounds was personally involved in unconstitutional conduct. *Christopherson*, 33 F.4th at 499 (explaining that a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged). For purposes of liability under § 1983, "[i]t is not enough that the defendant is a public official." *Campbell v. Reisch*, 986 F.3d 822, 824 (8th Cir. 2021). Instead, it is well-established that "defendants must be individually involved in the unconstitutional act to be liable under § 1983." *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 837 (8th Cir. 2021) (finding it was undisputed that the defendant in question was personally involved

21

in the allegedly unconstitutional acts, because he was the one who deployed tear gas at reporters). Somewhat more specifically,

> "[Section] 1983 liability is personal." *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (en banc). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

*Kingsley v. Lawrence Cnty.*, 964 F.3d 690, 700 (8th Cir. 2020). This is true, even if the individual whose liability is at issue is a supervisory defendant. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018). Thus, Lawton must plead facts that plausibly show direct involvement by Bounds in the allegedly unconstitutional conduct. *See Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014).

Lawton has not done so. Lawton alleges only that Bounds posted a public message on Twitter criticizing her behavior as "unprofessional" and "not in keeping with the standards of conduct" of UNL, Filing 23 at 4, and that Bounds assured Governor Ricketts and the Speaker of the Nebraska Legislature that Lawton would not be teaching at UNL, Filing 23 at 7. Lawton did not allege that Bounds made the decision to keep her out of the classroom. The allegations Lawton made do not plausibly suggest that Bounds had any direct, personal involvement in any decision affecting Lawton that allegedly violated her constitutional rights. *See Kingsley*, 964 F.3d at 700; *Jackson*, 747 F.3d at 545. Even if Bounds had some supervisory authority over other UNL employees, there are no allegations that he had direct involvement in any of their actions toward Lawton. *Marsh*, 902 F.3d at 754. Bounds merely criticized Lawton's conduct during her alleged exercise of free speech as "unprofessional" and "not in keeping with the standards of conduct" of UNL, but there are no allegations that he actually criticized the alleged political content of her speech. There may be an inference that Bounds agreed with Lawton's removal from teaching. Even so, there is no allegation that Bounds made the decision to take such action against Lawton.

22

Thus, these allegations are not enough to raise an inference of Bounds's personal involvement in unconstitutional actions. They are allegations of facts that are "merely consistent" with Bounds's liability, but they "stop[ ] well short of the line between possibility and plausibility." *Christopherson*, 33 F.3d at 499 (internal quotation marks and citations omitted).

Because Lawton has not alleged a plausible factual basis for Bounds to be held individually liable for any constitutional violation, all claims against him must be dismissed. *Mitchell*, 28 F.4th at 895; *Far E. Aluminium Works Co.*, 27 F.4th at 1364.

Lawton argues that "[t]he defendants apparently do not dispute that the Plaintiff has properly pled her causes of action against Chancellor Green." Filing 27 at 7. Lawton is correct that Defendants contrast allegations showing Bounds's lack of involvement in the decisions relating to her with her allegations paraphrased by Defendants to be "that it was in her meetings and communications with Green and employees of the Board of Regents where she was told she would be reassigned to nonteaching duties." Filing 26 at 7. Thus, Defendants appear to concede that Lawton alleged that Green had sufficient "personal involvement" to be liable if Lawton has indeed adequately pleaded her causes of action for federal constitutional violations. *Kingsley*, 964 F.3d at 700 (explaining that a plaintiff must show each individual defendant's personal involvement in the alleged violation).[5] Because of that concession, Green is not entitled to dismissal of Lawton's

---

[5] In making this concession at Filing 26 at 7, Defendants cited paragraphs 8, 13, 15, 20 of the Amended Complaint, Filing 23 at 4, 5, 6, and 7–8. Paragraph 8, Filing 23 at 4, alleges that Green was present at a meeting with Lawton and other UNL employees, but it does not allege that Green took any action toward Lawton. Paragraph 13, Filing 23 at 5, alleges that Lawton received a letter from an employee of the Board placing her on probation, but it does not allege that employee was Green. Paragraph 15, Filing 23 at 6, alleges that Lawton had another meeting with Green and others at which they viewed the video of the incident on August 25, 2017, but it does not allege any outcome of the meeting. Thus, the Defendants' concession—and indeed Lawton's claim that Green was involved in the alleged federal constitutional violations—hangs on the slender reed of Lawton's allegations in paragraph 20, Filing 23 at 7–8. That paragraph alleges that Lawton had a meeting with Green and other employees of the Board on November 17, 2017, during which Lawton alleges Green told her "that she could not return to the classroom because it would be too disruptive to the campus and there would be negative press to the university." Filing 23 at 7–8.

claims for failure to allege his "personal involvement." Thus, the Court will pass on to the question of whether Lawton has adequately pleaded claims for federal constitutional violations, where Green is now the only possible remaining Defendant.

      2.  *Lawton Does Not Adequately Allege a First Amendment Violation*

Count One of Lawton's Amended Complaint asserts a claim of free speech retaliation in violation of the First Amendment to the United States Constitution. Filing 23 at 13. The parties dispute whether Count One states a claim on which relief can be granted.

      a.  The Parties' Arguments

Defendants argue that Lawton fails to identify sufficiently the substance of any speech or conduct protected by the First Amendment. Filing 26 at 8. They argue that to avoid dismissal, a plaintiff alleging a First Amendment violation must at least put the defendants on notice that some specific speech or conduct by the plaintiff led to adverse employment action. Filing 26 at 8. Here, Defendants argue, allegations of Lawton's speech and conduct as well as the context surrounding the speech and conduct are conspicuously absent from the Amended Complaint. Filing 26 at 9.

Lawton responds that Defendants' argument is disingenuous in this case because the Defendants know what speech is at issue, where they watched the video of her protest. Filing 27 at 11–12. She contends that the content, form, and context of her allegedly protected activity are apparent from the allegations in the Amended Complaint: Her protest was about a group who came to UNL ostensibly to promote conservative ideals to students; the focus of her protest was conservative activism, which is an issue of public concern; and her protest was peaceful. Filing 27 at 10–11.

In reply, Defendants argue that Lawton has not addressed the "gaping hole" in her First Amendment claim, which is the substance of her conduct on August 25, 2017; they argue she

cannot simply presume Defendants know the substance already so that Rule 8(a) requirements do not apply. Filing 28 at 3. Defendants also argue that it is not enough to allege the conduct involved a particular topic or subject to show the speech was on a matter of public concern. Filing 28 at 4. Defendants argue that the Court is left with nothing to examine but Lawton's allegations of how her conduct was described by others. Filing 28 at 8.

     b.  Discussion

The Supreme Court recently reiterated, "'[A]s a general matter,' the First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259 (2022) (quoting *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019)). The issue here is the adequacy of Lawton's pleading of a First Amendment retaliation claim and more specifically her pleading of allegedly protected speech.

The Eighth Circuit Court of Appeals has explained,

> To establish a protected-speech retaliation claim, [a plaintiff] must show: (1) that she engaged in First-Amendment-protected activity; (2) that the defendants "took an adverse employment action against h[er]"; and (3) that the "protected speech was a substantial or motivating factor in [the defendants'] decision to take the adverse employment action." *Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020) (citation omitted).

*Ackerman v. Iowa*, 19 F.4th 1045, 1058 (8th Cir. 2021). Defendants have challenged only the sufficiency of Lawton's pleading to raise an inference of plausibility on the first element. As to that element, "'[t]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.'" *Nagel v. Jamestown*, 952 F.3d 923, 929 (8th Cir. 2020) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).

25

"[I]n determining whether employee speech addressed a matter of public concern, [courts] examine the content, form, and context of the speech." *Nagel*, 952 F.3d at 930 (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Consequently, the Circuit Courts of Appeals to consider the question directly agree that a public employee's First Amendment retaliation claim requires the public employee to identify protected speech with some specificity. *DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021) ("A First Amendment claim requires [a plaintiff] to identify protected speech."); *Welton v. Durham Cnty.*, 781 F. App'x 242, 244 (4th Cir. 2019) (finding "the complaint failed to identify any protected conduct—such as the expression of any idea or opinion or the intent to convey a particularized message—that precipitated the retaliatory acts allegedly committed by Defendants" (internal quotation marks and citations omitted)); *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) ("The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation."); *Brooks v. Univ. of Wis. Bd. of Regents*, 406 F.3d 476, 479 (7th Cir. 2005) ("One fundamental problem is that the plaintiffs failed to provide specifics regarding what they said. Instead, they gave only vague descriptions of their speech."); *Kyle v. Morton High Sch.*, 144 F.3d 448, 454 (7th Cir. 1998) ("To avoid dismissal, the complaint for a First Amendment violation must at least put the defendants on notice that some specific speech or conduct by the plaintiff led to the termination.").

As a specific example, the Seventh Circuit Court of Appeals affirmed summary judgment for defendants on a free speech retaliation claim against the University of Wisconsin Board of Regents. *Brooks*, 406 F.3d at 479. In doing so, the court explained,

> We know that [plaintiffs] engaged in criticism and "opposed," "expressed concern," "addressed," and "spoke out against" various school decisions. But what exactly did they say? Did they specifically discuss issues of importance to the public? We cannot tell, which is fatal to their claims arising from their criticism of Sutula and of school decisions. There is simply not enough evidence in the record

26

to determine whether they spoke out about matters of public concern. *See Michael [v. St. Joseph County]*, 259 F.3d [842,] 846–47 [(7th Cir. 2001)] (plaintiff failed to demonstrate retaliation where a vague characterization of what was said was the only evidence of protected speech).

*Brooks*, 406 F.3d at 479–80. Admittedly, the decision in *Brooks* concerned summary judgment. *Id.* at 479. Even at the motion to dismiss stage, however, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson*, 2 F.4th at 1068 (internal quotation marks and citations omitted).

Lawton has cited no authority for the proposition that Rule 8 and Rule 12(b)(6) standards do not apply, if the Defendants already know the content of a plaintiff's speech. Moreover, the problem here is not so much the insufficiency of notice to Defendants of Lawton's claim as it is whether Lawton has provided sufficient information to the Court to determine whether her claim is plausible. *Mitchell*, 28 F.4th at 895; *Far E. Aluminium Works Co.*, 27 F.4th at 1364. The video on which Lawton relies for sufficiency of notice to Defendants is not attached to the Complaint or Amended Complaint, so information available to the Court of Lawton's claim must come from the face of the Amended Complaint. The Amended Complaint, however, provides at best threadbare and conclusory factual allegations that lack sufficient specificity to raise Lawton's right to relief on her free speech retaliation claim above the speculative level or to support a reasonable inference that Defendants are liable. *Richardson*, 2 F.4th at 1068.

Specifically, numbered paragraph 5 of Lawton's Amended Complaint alleges the circumstances of her allegedly protected conduct. Filing 23 at 2–4. It states the following, with subparagraph letters added in brackets for the sake of convenience:

> [a] On or about August 25, 2017, the plaintiff protested in the 'free speech area' located on the University of Nebraska - Lincoln campus. The Plaintiff stood

in with and spoke to protest of a national political group called "Turning Point USA". The Plaintiff stood in with and spoke to protest of a national political group called "Turning Point USA".

[b] Turning Point USA is a controversial self-designated, conservative not-for-profit political group which is "dedicated to documenting and exposing college professors who discriminate against conservative students, promote Anti-American values and advance leftist propaganda in the classroom".

[c] As of December 2016, more than 250 university and/or college professors have been added to the professor watch list site. However, the list of professors contained inaccuracies including professors listed for comments they did not say or reasons such as "simply aggregating" academics who had been subject to news reports. A university or college professor could be added to the list without any evidence of factual basis to support the claims made on the list.

[d] Further, many have criticized the site as "a threat to academic freedom". There have been professors who have reported threats made against them because they had been placed on the professor watch list.

[e] The plaintiff, on or about August 25, 2017, along with others, stood in the "free speech area" at or near the student union. The "free speech area" was so designated by the defendants to allow students and faculty members to engage in their First Amendment right to free speech.

[f] The plaintiff protested Turning Point USA expressing her opinions and views in said designated area, as an individual. This expression was not related to her employment duties. The plaintiff was expressing concerns regarding the political groups' [sic] motives and movement, bringing attention to views opposing those of Turning Point USA.

[g] As an educator, the Plaintiff was regularly required to challenge the thoughts and beliefs of others and develop opinions strong enough to be able to defend. These values carried over into the personal life of the plaintiff.

[h] A member of Turning Point USA took a video of the plaintiff during the demonstration. The video was publicized by Turning Point USA which resulted in significant publicity and Ms. Lawton began receiving harassment from others as well as persons, including a state senator, demanding that she be expelled from the University.

Filing 23 at 2–4.

The Court can glean little from the Amended Complaint that identifies Lawton's allegedly protected speech, *see, e.g.,* *DeCrane,* 12 F.4th at 594, and more specifically, its content, form, and

context, *see Nagel*, 952 F.3d at 930; *Brooks*, 406 F.3d at 479-80. The only information about the "context" is that it was in the "free speech area" of the UNL campus, as indicated in subparagraphs [a], [e], and [f] above, and that Lawton's protest was "along with others," as indicated in subparagraph [e] above. Subparagraph [e] alleges that the context was "at or near the student union," but nowhere does Lawton allege other facts indicating "context," such as the time of day; how many "others" were present; whether the protest was organized or *ad hoc*; or whether the protest was during or disruptive of a demonstration or other action by Turning Point USA at the same or a different location. As to "form," *see Nagel*, 952 F.3d at 930, it appears from subparagraph [a] that the protest was "spoken," and from subparagraph [e] that Lawton "stood" to make her speech. Paragraph 5 does not indicate such things as whether Lawton was speaking alone, shouting with others, using any audio equipment, holding any signs, marching or moving around, or approaching others to confront them directly or to hand out materials.

Moreover, the Amended Complaint includes allegations about the "form"—if not the "content"—of her speech that undermine any inference that Lawton's speech was protected. Those allegations involve the descriptions of Lawton's conduct during the August 25, 2017, incident by Defendants and other UNL employees. Lawton alleges that Bounds described her behavior "as 'unprofessional' and 'not in keeping with the standards of conduct' of the University," Filing 23 at 4; that a spokesperson for the Board described her behavior as failing to meet UNL's "expectations for civility" and "not representative of the University where the robust free exchange of ideas takes place 24 hours a day, 7 days a week," Filing 23 at 5; and that Green stated that Lawton "will not teach at our university because of [her] inappropriate behavior," Filing 23 at 9.

These descriptions of the "form" of Lawton's speech undermine the inference that Lawton's speech was protected.[6]

The biggest failing, however, is in identification of the "content" of Lawton's speech. *See Nagel*, 952 F.3d at 930. Subparagraphs [a] and [f] indicate that the general topic of Lawton's speech was a political group called "Turning Point USA." Indeed, it would be reasonable to say that the Court can glean much more information about "Turning Point USA" from subparagraphs [a], [b], and [c] than it can about the "content" of Lawton's speech from the entirety of paragraph 5. Also, although Lawton alleges in subparagraph [d] that "many" have criticized Turning Point USA's "professor watch list" website mentioned in subparagraph [c], she does not allege that such criticism was the "content" of her own allegedly protected speech. Instead, in subparagraphs [e] and [f], Lawton alleges only that she was in the "free speech area" "expressing her opinions and views" and her "concerns regarding [Turning Point USA's] motives and movement," and "bringing attention to views opposing those of" that organization. Lawton does not allege what any of those "opinions," "views," or "concerns" were; what "motives and movement" of Turning Point USA she protested; or what "opposing views" she attempted to bring to the attention of those in the area. Lawton's allegation in subparagraph [f] that she was expressing her views "as an individual" is a legal conclusion which the Court need not accept as true. *Knowles*, 2 F.4th at 755. Subparagraph [g] alleges personal information about Lawton, but none that actually relates to the

---

[6] These allegations also undermine the inference that Lawton's protected speech, if any, was the reason for any allegedly adverse action against her by Defendants or that Defendants did not have a good reason for actions taken against her, even if her speech was protected. Indeed, they suggest action was taken against Lawton for conduct that impinged on the free speech rights of others. Even if a public employee was speaking as a citizen on a matter of public concern, the public employee's speech is not protected against employer retaliation if the government entity had an adequate justification for treating the employee differently from any other member of the general public, which "requires a court to balance 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Nagel v. Jamestown*, 952 F.3d 923, 930 (8th Cir. 2020) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). The Court does not reach that issue here.

content of her protest, and subparagraph [h] alleges that a member of Turning Point USA took a video of her, also without any indication of the content of her protest, and that subparagraph also sets out some events after her protest.

In short, the Court finds itself in much the same position as the Seventh Circuit Court of Appeals in *Brooks*: This Court knows that Lawton engaged in criticism and "opposed," "express[ed] concerns regarding," and "spoke against" Turning Point USA, but what exactly did she say?[7] *Cf. Brooks*, 406 F.3d at 479. Did she specifically discuss issues of importance to the public? *Cf. id.* at 479-80. This Court cannot tell, and that is fatal to Lawton's claims arising from her August 25, 2017, protest. *Id*. at 480. Much as in *Brooks*, there is simply not enough factual information in the Amended Complaint from which this Court can infer that Lawton spoke about matters of public concern. *Cf. id*. at 80 (making a similar observation about the record on summary judgment); *see also Christopherson*, 33 F.4th at 499 ("A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotation marks and citation omitted)); *Mitchell*, 28 F.4th at 895 (explaining that a complaint must contain sufficient nonconclusory allegations, accepted as true, to make it not just conceivable but plausible that the defendant is liable (internal quotation marks and citations available)); *Far E. Aluminium Works*, 27 F.4th at 1364 (same). Finally, Lawton's failure to plead adequately that she engaged in protected speech also undermines

---

[7] The elephant in the room, of course, is that a video of the incident giving rise to the objections by the University and various political leaders and the actions taken against the Plaintiff has been widely distributed. The Court believes such video likely could have been provided by the University in support of this motion given it was incorporated by reference by the Plaintiff in her complaint. *Buckley*, 9 F.4th at 760–61 (explaining that on a motion to dismiss the court may also "rely on materials 'necessarily embraced by the pleadings,' including exhibits attached to the complaint and matters of public record" (quoting *Greenman*, 787 F.3d at 887)). For reasons the Court does not fully understand, the University did not do so. Given the video is not part of the pleadings in this case, the Court may not consider the video in deciding this motion and does not do so.

any inference of Defendants' liability on her claims, because they undermine her numerous allegations that various meetings were in fact about her "exercise of [her] First Amendment rights," when the meetings may have concerned other aspects of her conduct during the incident, including her lack of civility and professionalism. *See, e.g.,* Filing 23 at 4 (¶¶ 6 and 8), 6 (¶ 15).

Lawton's First Amendment retaliation claim must be dismissed for failure to state a claim on which relief can be granted.

Lawton's failure to state a claim on her First Amendment retaliation claim also impacts the sufficiency of her pleading of her other claims of federal constitutional violations, where her other claims all arise from that alleged First Amendment Violation. Specifically, Lawton's "due process" claim in Count Two alleges, "Due to plaintiff's exercise of her First Amendment rights in the free speech zone created by the defendants, the plaintiff suffered an adverse employment action and/or an action adversely affecting plaintiff's educational opportunities in which she was barred from teaching," and that adverse action was imposed without due process. Filing 23 at 16. Lawton's first "equal protection" claim in Count Three alleges, "Due to plaintiff's exercise of her First Amendment rights . . . , the plaintiff suffered an adverse employment action and/or an action adversely affecting plaintiff's educational opportunities . . . all in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." Filing 23 at 18. Lawton's second "equal protection" claim in Count Four alleges, "Due to plaintiff's gender as a woman, exercising her first amendment right, the plaintiff suffered an adverse employment action and/or action adversely affecting her educational opportunities . . . , all in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." Filing 23 at 19–20. Thus, Lawton's allegation of a First Amendment violation is essentially a "doorway" to her other claims of federal constitutional violations, but that "doorway" is now shut.

32

### 3. *Lawton Does Not Adequately Allege a Due Process Violation*

In Count Two, Lawton asserts Defendants deprived her of a property interest in her employment with UNL without an opportunity to be heard at a meaningful time and in a meaningful manner in violation of her due process rights under the United States Constitution. Filing 23 at 16.[8] In their brief in support of their Motion to Dismiss, Defendants point out that Lawton did not specify in her Amended Complaint whether she is claiming a violation of substantive due process or procedural due process, but Defendants assert that her Amended Complaint does not state a claim for violation of either. Filing 26 at 10. The Court concludes that the claim alleges a violation of procedural due process, because Plaintiff's Brief in Opposition relies heavily on *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), which involved only procedural due process. Filing 27 at 13–15. Thus, the Court will consider only whether Lawton has stated a claim for violation of procedural due process in Count Two on which relief can be granted.

### a. The Parties' Arguments

Defendants argue that Lawton's claim that her right to procedural due process was violated fails because she has not plausibly alleged the loss of a constitutionally protected property interest, and because she has not alleged that she requested a hearing. Filing 26 at 11. Defendants argue that Lawton does not allege that she lost her job with the University, only that she was reassigned different, non-teaching duties, but such a reassignment does not implicate a protected property interest. Filing 26 at 11. Even if Lawton has adequately alleged deprivation of a protected property interest, Defendants argue that she did not object to her initial removal from the classroom and

---

[8] Again, the Court understands this claim to allege a due process violation, despite apparently "stray" references to equal protection. The Court also understands that to the extent Count Two was intended to assert an equal protection violation, it appears to be duplicative of the equal protection violation alleged in Count Three. Filing 23 at 18.

never requested a hearing after being notified in November 2017 that she would not return to the classroom for the Spring 2018 semester, which defeats her claim. Filing 26 at 12.

Lawton contends that she was entitled to a hearing, because the adverse actions she suffered impacted her educational and career opportunities and damaged her reputation. Filing 27 at 13. She also argues that the UNL Bylaws required such a hearing. Filing 27 at 15. She asserts further that she had a liberty interest in working. Filing 27 at 15 (citing *Roth*, 408 U.S. at 587 (Marshall, J., dissenting)).

In reply, Defendants assert that even if Lawton's contract was for teaching, reassignment to non-teaching duties is not a due process violation, because not every breach of a public employment contract is a deprivation of a property right under the due process clause. Filing 28 at 9. This is so, they argue, because a breach of contract that does not terminate the employment relationship does not equate with the loss of a property right. Filing 28 at 10. Defendants argue that Lawton has not alleged a liberty interest, because she did not allege such a claim in her Amended Complaint, and she has not alleged any statement in the course of her termination that is defamatory. Filing 28 at 11.

b.  Discussion

"To state a claim for procedural due process, a plaintiff must show 'a deprivation of life, liberty, or property without sufficient process.'" *In re Kemp*, 894 F.3d 900, 908 (8th Cir. 2018) (quoting *Hughes v. Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016)). The Court need not consider a due process claim based on a deprivation of liberty, however, because Lawton has not pleaded such a claim anywhere in the Amended Complaint. Thus, the Court will consider only whether Lawton has adequately pleaded deprivation of property.

As the Eighth Circuit Court of Appeals has explained,

34

> To succeed on her claims, [a plaintiff] must prove she was deprived of "'a property right in continued employment' without due process." *Floyd–Gimon v. Univ. of Ark. for Med. Sci. ex rel. Bd. of Tr. of Univ. of Ark.*, 716 F.3d 1141, 1146 (8th Cir. 2013) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

*Correia v. Jones*, 943 F.3d 845, 847–48 (8th Cir. 2019). "State law and the terms of employment determine whether the plaintiff's interest in his or her job rises to the level of a constitutionally protected property right." *Mogard v. City of Milbank*, 932 F.3d 1184, 1190 (8th Cir. 2019). Thus, contractual or statutory limitations on the employer's ability to terminate an employee may give rise to the required property interest. *Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 625 (8th Cir. 2019); *In re Kemp*, 894 F.3d at 908 (explaining that the source of the property interest must be independent of the Constitution).

Here Lawton has sufficiently alleged that she had a contract for a "Special Appointment," for a term running from August 14, 2017, to May 11, 2018, at a specified salary. Filing 23 at 2. Thus, she has identified a contractual basis for her alleged property interest in her job. *See Voss*, 917 F.3d at 625 (explaining that a contractual limitation on the employer's ability to terminate an employee may give rise to the required property interest). The question here, however, is whether Lawton has adequately alleged the loss of a protected property interest.

"[T]he Due Process Clause requires 'some form of pretermination hearing' prior to an employee's discharge." *Nagel*, 952 F.3d at 932 (quoting *Loudermill*, 470 U.S. at 542). Defendants are correct, however, that Lawton has not alleged anywhere in her Amended Complaint that she

was discharged. Instead, Lawton complains of the loss of her teaching duties.[9] Also, because Lawton has not alleged that she was terminated, the UNL Bylaws requiring the University to carry the burden of proving adequate cause for termination by the greater weight of the evidence provide no support for her due process claim. *See, e.g.,* Filing 23 at 8–9.

Relying on out-of-circuit precedent, Defendants contend that Lawton has no property interest in a particular job assignment, so her removal from teaching duties did not implicate a property interest. Filing 26 at 11–12. There is precedent from the Eighth Circuit Court of Appeals that is relevant, however. In *In re Kemp*, a state trial judge who was permanently barred from presiding over death penalty cases asserted constitutional claims. 894 F.3d at 903. As to his due process claim, the court concluded that the judge "has no right to hear specific categories of cases," because the Arkansas Constitution provided only a broader statement of a judge's responsibilities and gave the state Supreme Court the authority to superintend the lower courts. *Id.* at 908–09. Similarly, a school district employee who was reassigned before the end of the school year from her position as an elementary school principal to a position involving assignment of students to

---

[9] *See* Filing 23 at 4–5 (alleging removal from teaching duties for the Fall 2017 semester), 7 ("This decision to ban the plaintiff from teaching in 2017-2018 and/or permanently barring the plaintiff from teaching at the UNL in any capacity was done without notice to the plaintiff and without any adjudication hearing, all to her damage, including past, present and future, loss of income, humiliation, anxiety, worry, and mental anguish."), 8 (alleging that the Board "took no action to return to her teaching duties"), 9 (alleging adverse action "by suspending her from teaching in second semester"), 10 ("The defendants and each of them knew or should have known that removing the plaintiff from teaching violated her constitutional rights as set forth above."), 11 (alleging that the investigation by the American Association of University Professors (AAUP) was "of the facts surrounding the plaintiff being removed from teaching in the classroom"), 14 (alleging that the adverse action underlying her First Amendment retaliation claim was that she "was barred from teaching"), 14–15 (alleging in the context of the First Amendment retaliation claim that after the October 25, 2017, meeting at "Lawton was not terminated nor was she permanently removed from future teaching assignments," the Defendants were criticized for not terminating her), 16–17 (alleging in the context of the due process claim that the adverse action was that "she was barred from teaching" and a "permanent ban" on ever teaching at UNL), 18 (alleging in the context of her first equal protection claim that the adverse action was that "she was barred from teaching"), 18 (alleging in the context of her first equal protection claim that she was adversely affected by "not being able to participate in classroom teaching"), 19 (alleging in the context of her second equal protection claim that the adverse action against her was that "she was barred from teaching"), 20 (alleging in the context of her second equal protection claim that her education was adversely affected by "not being able to participate in classroom teaching").

36

schools based on their needs asserted constitutional claims against the school district in *Buchanan v. Little Rock Sch. Dist. of Pulaski County*, 84 F.3d 1035, 1037 (8th Cir. 1996). The defendants argued that neither Arkansas law nor the former principal's employment contract created a property interest in a particular assignment, and the court agreed. *Id.* at 1038–40. The court found that a state statute provided that a principal would perform duties as assigned by the superintendent. *Id.* at 1038–39. The court also rejected a property interest in a particular assignment based on provisions in the principal's contract, because the contract also specified that, while her "primary responsibility" was as an "elementary principal," she would "perform services as assigned by the Superintendent." *Id.* at 1039. The court rejected "customs and practices" of the district as supporting the principal's claim, because reassignment of principals was not uncommon in the district. *Id.*

On the other hand, the Eighth Circuit Court of Appeals has explained that a public employee "can have a protected property interest in a benefit, such as a particular assignment or duty station, if he legitimately expects to continue in that assignment or duty station." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 900–01 (8th Cir. 1994). The court found that the plaintiff had such a property interest in assignment at his original school such that his transfer to another school after an altercation with a student implicated due process. *Id.* The court explained,

> Here, the School District has not suggested that [the plaintiff] would have been transferred if the incident had not occurred. He had an impeccable record at East High and legitimately expected to stay there. Under the circumstances, [the plaintiff] has demonstrated a weighty private interest in retention of his job, his assignment, and his good name that are adversely affected by the School District's official actions of suspension and punitive transfer.

*Winegar*, 20 F.3d at 901.

Lawton alleges that "[a]t all times, the plaintiff's teaching prior to her being removed involuntarily from the classroom, was satisfactory." Filing 10. That allegation does not put her on a par with the teacher in *Winegar*, however. Lawton's teaching term had begun a mere eleven days before the incident giving rise to the Defendants' allegedly adverse actions, while the teacher in *Winegar* had nineteen years of "impeccable" service. 20 F.3d at 900–01. On the other hand, Lawton has alleged that not only did she have a contract, "[h]er responsibilities were 100 percent teaching," consisting of teaching two courses in the Fall 2017 semester and two courses in the Spring 2018 semester. Filing 23 at 2. This differentiates Lawton's contract from the contract of the principal in *Buchanan*, whose contract and applicable statutes provided that she was required to perform duties as assigned by the superintendent, even if her contract identified her "primary responsibility" as "elementary principal." 84 F.3d at 1039. This Court must assume Lawton's allegations about the terms of her contract are true, even if the Court has considerable doubt that the Defendants would write a contract that did not authorize them to reassign a lecturer to other duties if necessary. *See Twombly*, 550 U.S. at 555 (explaining the court must decide a motion to dismiss "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)") (internal quotation marks and citation omitted).[10] Under these circumstances, the Court must assume that Lawton had a property interest in her assignment to teach classes.

---

[10] The Court notes that Lawton relied heavily on her contract to support her claim of a property right in her teaching assignment, but she did not attach the contract to her Complaint or her Amended Complaint. The Court clearly could have considered the contract, if it had been attached or otherwise available in the record, as a document encompassed by the pleadings. *See, e.g., LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) ("Our precedent permits consideration of 'materials necessarily embraced by the pleadings, including exhibits attached to the complaint and matters of public record.'" (quoting *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021)). The same is true of the video of the incident, which Lawton also did not attach to the Complaint or the Amended Complaint.

Defendants argue that, even if Lawton had the required property interest in her teaching assignment, she did not object to her initial removal from the classroom during the Fall 2017 semester and never requested a hearing after being notified of a decision in November 2017 that she would not return to the classroom for the Spring 2018 semester. Filing 26 at 12. Defendants argue that a plaintiff asserting deprivation of a property right in violation of procedural due process must exhaust state remedies before asserting a claim under § 1983. Filing 26 at 13. Lawton has not responded to this argument.

The Eighth Circuit Court of Appeals has explained,

> Generally, plaintiffs need not exhaust state administrative remedies before filing a § 1983 action. *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). We recognize an exception to this general rule and require plaintiffs to exhaust state remedies before asserting a § 1983 procedural due process claim. "A plaintiff cannot complain of a violation of procedural due process when he has not availed himself of existing procedures." *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 590 (8th Cir. 2017) (quotation omitted).

*Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 582 (8th Cir. 2021). Defendants are correct that Lawton agreed to her initial removal from the classroom. Filing 23 at 4. Defendants are also correct that Lawton never invoked any state remedies, even after being notified that she was being placed on "probation" on September 6, 2017, before asserting her due process claim. Filing 23 at 5. Instead, on September 13, 2017, Lawton "sought guidance" from her department chair at UNL, but she does not allege what she was told by her department chair. Filing 23 at 5. Instead, she alleges she "was given the impression there were procedures and policies in place that prevented her from taking any further grievance action at this point with respect to the September 6, 2017, adverse employment action and/or an action adversely affecting [her] educational opportunities." Filing 23 at 6. "Seeking guidance," then doing nothing, does not provide an inference that Lawton exhausted her administrative remedies.

39

However, as the Eighth Circuit Court of Appeals has also explained, "'[I]t is not necessary for a litigant to have exhausted available postdeprivation remedies when the litigant contends that he was entitled to *predeprivation* process.'" *Does 1-2*, 999 F.2d at 582 (emphasis in the original) (quoting *Keating v. Neb. Pub. Power Dist.*, 562 F.3d 923, 929 (8th Cir. 2009)). This exception to the exhaustion rules for due process claims pursuant to § 1983 still does not permit Lawton's claim to proceed. Even assuming Lawton had a property interest in her teaching assignment, her due process claim fails because she received all the process she was due.

More specifically,

"A public employee with a protected property interest in continued employment receives sufficient due process if he [or she] receives notice, an opportunity to respond to the charges before his [or her] termination, and post-termination administrative review." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). A pre-deprivation hearing need only provide the employee with "oral or written notice of the charges against him [or her], an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story." *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487. "[T]he pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545, 105 S.Ct. 1487.

*Floyd-Gimon v. Univ. of Arkansas for Med. Scis. ex rel. Bd. of Trustees of Univ. of Arkansas*, 716 F.3d 1141, 1146 (8th Cir. 2013). In *Floyd-Gimon*, the Court held that the plaintiff, a liver transplant coordinator for a university medical sciences department, received sufficient pre-deprivation process through three meetings with her supervisors before her termination during which she was repeatedly told that she was accused of altering records and she received the opportunity to present her side of the story. *Id.* at 1146–47.

In this case, Lawton's Amended Complaint alleges that she did not receive the pre-deprivation process she contends she was due. Filing 23 at 7 (alleging she was banned from teaching "without notice to the plaintiff and without any adjudication hearing"), 10 (alleging that she was removed from the classroom "without notice to the plaintiff and without any opportunity

for a hearing"); *see also* Filing 23 at 9 (alleging that she was "never given notice of any adjudication hearing" and never "offered or received an adjudication hearing"). In this case, the face of Lawton's Amended Complaint shows that—much as in *Floyd-Gimon*, 716 F.3d at 1146–47—Lawton received all the pre-deprivation process she was due. Lawton alleges that on or about August 27, 2017, she met with the Chair of the College of Arts and Sciences and other university employees pursuant to their request to gather information regarding the incident on August 25, 2017. Filing 23 at 4. The next day, she met with Green and other UNL employees "to discuss [her] exercise of her First Amendment rights," where she was informed of the angry response her conduct had aroused. Filing 23 at 4. It was during this meeting that Lawton agreed to her initial removal from the classroom. Filing 23 at 4. Further, the Amended Complaint shows on its face that before a determination was made to bar Lawton from the classroom for the Spring 2018 semester, Lawton met again with Green and others on October 24, 2017, to discuss the August 25, 2017, incident and to view the video of that incident. Filing 23 at 6. The Amended Complaint also shows that Lawton was not told she could not return to the classroom until another meeting with Green and other employees on or about November 17, 2017. Filing 23 at 7.

Thus, the only reasonable inference is that, no later than August 28, 2017, Lawton had already had at least oral notice of the charge of unprofessional conduct, an explanation of the information UNL had about the incident, and an opportunity to present her side of the story. She had at least one further opportunity to discuss the situation and to view a video of the incident on October 24, 2017, before the decision was made to remove her from teaching for the Spring 2018 semester. That was sufficient "pre-deprivation" process to satisfy due process. *Floyd-Gimon*, 716 F.3d at 1146–47. The Amended Complaint does not indicate that Lawton made any attempt to pursue any grievance procedure after the decision was made to remove her from teaching for the

remainder of the academic year. *Does 1-2*, 999 F.2d at 582 (explaining that when post-deprivation process is at issue, the plaintiff must exhaust state administrative remedies on a claim of deprivation of a property right in violation of due process).

Lawton's due process claim must be dismissed for failure to state a claim on which relief can be granted.

### 4. *Lawton Fails to State Equal Protection Claims on Which Relief Can Be Granted*

Lawton alleges two equal protection claims. In Count Three, she alleges that she suffered adverse action for exercising her free speech rights when other students who exercised such rights were not. Filing 23 at 18. In Count Four, she alleges that she was disciplined differently for exercising her free speech rights than other students on the basis of her sex. Filing 23 at 19-20. Defendants contend that neither Count pleads a claim on which relief can be granted.

#### a. The Parties' Arguments

Defendants argue the first equal protection claim, a class-of-one claim, is not cognizable in the context of public employment and that Lawton has failed to identify similarly situated persons treated differently. Filing 26 at 14–15. They contend that her gender-based equal protection claim fails because Lawton has not alleged the existence of similarly situated male faculty members. Filing 26 at 15–16. Defendants also point out that Lawton has failed to allege her protected conduct with sufficient specificity to allow any comparison to others. Filing 26 at 17. Finally, Defendants contend that Lawton has not alleged any basis for a finding that her gender was relevant to any decision. Filing 26 at 17–18.

Lawton argues that the Amended Complaint contains sufficient allegations of fact to support her gender-based equal protection claim. Filing 27 at 15–18. She does not appear to contest Defendants' argument that her class-of-one claim in Count Three is not viable. *See also* Filing 28

42

at 12 (Defendants' reply brief pointing out this omission in Lawton's brief in opposition). As to her gender-based equal protection claim, Lawton contends that she has adequately pleaded discrimination against her based on her membership in a protected class by alleging that certain male students who engaged in political speech were treated differently. Filing 27 at 16–17.

      b.  Discussion

In *Mathers v. Wright*, the Eighth Circuit Court of Appeals rejected a plaintiff's equal protection claim based on a class-of-one claim, as follows:

> A class-of-one claim is stated when a plaintiff alleges that a defendant intentionally treated her differently from others who are similarly situated and that no rational basis existed for the difference in treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916 (8th Cir.2001). More recently, in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), the Supreme Court delineated the outer limits of this cause of action when it concluded that class-of-one claims are not cognizable in the context of public employment.

*Mathers v. Wright*, 636 F.3d 396, 399–400 (8th Cir. 2011). Therefore, Lawton's class-of-one claim in Count Three is not cognizable and will be dismissed. *Couzens*, 854 F.3d at 517 (dismissal for failure to state a claim is appropriate for claims that are not cognizable under applicable law).

As to Lawton's gender-based equal protection claim, Defendants are correct that Lawton's failure to allege protected conduct in support of her First Amendment retaliation claim also dooms this claim. If Lawton has not adequately pleaded a First Amendment violation, then there is no basis to determine whether she was treated differently than any male who engaged in conduct protected by the First Amendment. *See* Filing 23 at 19–20 (Count Four alleging that "[d]ue to plaintiff's gender as a woman, exercising her first amendment right, the plaintiff suffered an adverse employment action and/or action adversely affecting her educational opportunities . . . ,

43

all in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.").

Even assuming Lawton had alleged that Defendants took action against her for exercising her First Amendment free speech rights, she still fails to meet the requirements of a gender-based equal protection claim. "[T]he Equal Protection Clause requires that the government treat . . . similarly situated persons [of different genders] alike." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013). A bald assertion that the plaintiff "is a victim of gender discrimination" is not sufficient. *Id.* Instead, the plaintiff must plead evidence suggesting a gender-based animus, such as gender-related comments or conduct. *Id.* at 1015. Also, conclusory assertions that a female plaintiff was discharged or treated differently under circumstances where similarly situated men were not "imports legal language couched as a factual allegation" and fails to raise a right to relief above the speculative level. *Id.* Thus, a female employee's equal protection claim fails if she does not allege facts plausibly suggesting that similarly situated male employees were treated differently. *Id.* at 1015. The test is "'rigorous'" to show that male comparators who were treated differently were "similarly situated in all relevant respects." *Floyd-Gimon*, 716 F.3d at 1150 (quoting *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955–56 (8th Cir. 2012)). Thus, for example, "[t]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012)).

One problem with Lawton's gender-based equal protection claim is that her Amended Complaint contains no more than the sort of bald assertion of gender discrimination found insufficient in *Hager*. She alleges that "[d]ue to plaintiff's gender as a woman, exercising her first

44

amendment right," she was treated differently than males. *Hager*, 735 F.3d at 1014–15 (finding inadequate and conclusory the plaintiff's allegation that she was "a victim of gender discrimination" and was treated differently than similarly situated males). Like the plaintiff in *Hager*, Lawton has not alleged any gender-related comments or conduct. *Id.* at 1015. Thus, Lawton alleges no facts raising an inference that gender was even involved in the Defendants' actions toward her. *Mitchell*, 28 F.4th at 895; *Far E. Aluminium Works Co.*, 27 F.4th at 1364.

Another problem with Lawton's gender-based equal protection claim is that her Amended Complaint provides no facts that suggest similarly situated males were treated differently, especially in light of the "rigorous" test applicable to the comparison under governing law. *Floyd-Gimon*, 716 F.3d at 1150. Lawton alleges that there have been other instances of political speech by male students at UNL that did not result in discipline, citing an incident in which three male students who participated in football "took a 'knee'" during the National Anthem but they were not punished, Filing 23 at 12, and an incident involving a male white nationalist student's video asserting that he "loves violence," Filing 23 at 12–13. Lawton and the comparators were not "similarly situated in all relevant respects." *Floyd-Gimon*, 716 F.3d at 1150 (internal quotation marks and citations omitted). Indeed, neither incident involving alleged comparators is remotely similar to Lawton's, so that different treatment provides no inference of gender-based unequal treatment. The fact that Lawton was an employee, as well as a graduate student, and the alleged male comparators were undergraduate students is a mitigating and distinguishing circumstance as to their treatment. *Id.* The employment relationship simply is not comparable to the educator-student relationship.

Thus, Lawton fails to state a claim of an equal protection violation on which relief can be granted.

45

### III. CONCLUSION

The Court concludes that all of Lawton's claims must be dismissed. Lawton has not requested leave to amend in the alternative, if her claims are subject to dismissal. Also, she filed her Amended Complaint in response to Defendants' original Motion to Dismiss. Thus, Lawton has had adequate opportunity to attempt to plead viable claims. Under these circumstances, the Court concludes that dismissal of the Amended Complaint will be with prejudice.

IT IS ORDERED that Defendants' January 24, 2022, Motion to Dismiss Plaintiff's Amended Complaint is granted, and this case is dismissed with prejudice.

Dated this 7th day of June, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge